882 F.2d 49
 Kenneth E. MAPP, Lillian Belardo de O'Neale, Virdin E.
Brown, Bingley G. Richardson, Sr., Elmo D. Roebuck,
Celestino A. White, Sr., Ana L. Davila, Howard Francis,
Claude Petersen, Henry Sealey and Dr. Thomas Edwin Donoghue,
Appellants,
v.
Honorable Bent LAWAETZ, President of the 18th Legislature,
Lorraine Berry, Alicia Hansen, Edgar Isles, Robert O'Connor,
David Puritz, Holland L. Redfield, II, Paul Alan Shatkin and
St. Claire Williams, Appellees.
 No. 89-3481.
 United States Court of Appeals,
Third Circuit.
 Submitted Under Third Circuit Rule 12(6)
July 25, 1989.
Decided Aug. 4, 1989.
 
 Julio A. Brady, Christiansted, St. Croix, U.S. Virgin Islands, for appellants.
 Andrew L. Capdeville, St. Thomas, U.S. Virgin Islands, for appellees.
 Before GIBBONS, Chief Judge, HUTCHINSON, Circuit Judge, and WOLIN, District Judge.*
 OPINION OF THE COURT
 HUTCHINSON, Circuit Judge.
 
 I.
 
 1
 Appellant Kenneth E. Mapp (Mapp) appeals an order of the Appellate Division of the District Court of the Virgin Islands. The district court reversed a decision of the Territorial Court of the Virgin Islands granting Mapp declaratory and injunctive relief against the president and other members of the 18th Legislature of the Virgin Islands (legislature) because the case was not justiciable.
 
 
 2
 The legislature had passed a bill removing Mapp as a member of that body and notified the Governor of the Virgin Islands that Mapp's seat was vacant. The bill based Mapp's removal on his failure to meet the standing requirements of voter registration and residency expressly set forth in Sec. 6(b) of the Revised Organic Act of 1954. Satisfying these conditions is required to be eligible for legislative office.
 
 
 3
 The district court held that the legislative majority required to remove a member for failure to meet the standing qualifications set forth in Sec. 6(b) was textually committed to the sole judgment of the legislature by Sec. 6(g) of that Act and was therefore a non-justiciable political question. However, Mapp contends that the procedure used to remove him by a simple majority vote violated his constitutional right to due process. We hold that the legislature's action in this case met due process requirements and that the question of whether its rule requiring a two-thirds vote applied to Mapp's case is a matter entrusted to that body for its final resolution.
 
 II.
 
 4
 Mapp is a long-time resident of the Virgin Islands and was a registered voter in the electoral district of St. Croix in 1987. In December of that year, he traveled to the State of Georgia to further his education. Appendix for Appellants (App.) at 6. In Georgia, he and his wife resided in a rented apartment in College Park. On January 11, 1988, he registered to vote in Fulton County, Georgia for the March 8, 1988 Democratic presidential preference primary. Appendix for Appellees (Supp.App.) at 35. In registering, Mapp swore that he was a citizen of the United States, the State of Georgia and Fulton County. He also affirmed that he possessed the qualifications of an elector as required by Georgia law and completed a card canceling his St. Croix registration. Id. at 36-37. On March 8, 1988, Mapp voted in the primary. App. at 8.
 
 
 5
 Neither Mapp's educational plans nor a subsequent business venture in Georgia worked out. Therefore, he left Georgia and returned to the Virgin Islands in April, 1988. Id. at 16. He did not re-register to vote in the Virgin Islands upon his return to St. Croix. Id. at 23-24.
 
 
 6
 Having once been a member of the legislature, Mapp decided to run again for a position in that body in the November, 1988 election. Not having received the card canceling Mapp's registration from Fulton County, the St. Croix Board of Elections certified his eligibility to run for the office of senator in the Virgin Islands' unicameral legislature. Supp.App. at 49. He was successful, and on December 2, 1988, the Board of Elections certified his election as a Senator in the 18th Legislature. Id. at 48. Mapp took the oath of office and assumed his senatorial duties on January 8, 1989.
 
 
 7
 One month later, on February 8, 1989, the supervisor of elections in St. Croix received the card from Fulton County canceling Mapp's Virgin Islands registration. The Board of Elections then met and attempted to withdraw its previous certification of Mapp because he did not qualify to seek and hold legislative office. Id. at 33-34, 50-51. Section 6(b) of the Revised Organic Act of 1954, the Virgin Islands' analogue of a state constitution, requires that members of the legislature be qualified voters and "bona fide residents" of the territory for three years before their election. By letter of April 12, 1989, appellee Senator Bent Lawaetz (Lawaetz), president of the legislature, was notified of this determination.
 
 
 8
 Lawaetz, in the name of the 18th Legislature, thereafter filed an action in district court seeking a declaratory judgment that Mapp was ineligible to continue serving as a member. On May 10, 1989, the district court dismissed that action, holding that the exclusive power and authority to determine Mapp's qualifications and eligibility for membership in the legislature rested with the legislature itself under Sec. 6(g) of the Revised Organic Act of 1954.
 
 
 9
 Immediately thereafter, Lawaetz sponsored Bill No. 18-0059 in the legislature. This bill recited the information that the election board had forwarded about Mapp's registration in Georgia, the relevant provisions of Sec. 6(b) on eligibility for the office of senator, the district court's decision not to intervene and the need to preserve "the integrity of the legislature." On the basis of all of these allegations, the bill asked the legislature to resolve:
 
 
 10
 SECTION 1. Kenneth E. Mapp is not qualified to be a member of the 18th Legislature of the Virgin Islands.
 
 
 11
 SECTION 2. Effective immediately, Kenneth E. Mapp is hereby removed as a member of the 18th Legislature.
 
 
 12
 Id. at 56. Mapp had notice of this bill's introduction and the allegations it contained.
 
 
 13
 Sitting as a committee of the whole, the legislature held a hearing on the bill on May 15-16, 1989. The hearing centered on whether Mapp had lost his domiciliary status as a result of his 1987 move to Georgia, his registration to vote there and his participation in the presidential preference primary. Both sides presented testimony and legal argument on that issue to the committee of the whole. In particular, Mapp testified and presented witnesses on his behalf. During the course of the hearing, Lawaetz ruled that the bill was subject to passage by a simple majority under Sec. 713 of the Rules of the 18th Legislature (Rule 713), rather than by a two-thirds majority under Sec. 813 of the Rules (Rule 813).
 
 
 14
 After closing arguments, the legislature reconstituted in regular session and deliberated on the merits of the bill. Although Lawaetz's earlier advice to the members, as presiding officer, that he interpreted the legislative rules to require only a simple majority vote to adopt this bill had not met objection, Senator Roebuck moved to apply Rule 813 and require a two-thirds affirmative vote for final passage. Lawaetz ruled that motion out of order. Roebuck challenged the chair's ruling, but the members upheld the chair by a 9 to 6 vote. App. at 86-89. This same 9 to 6 majority then voted for final passage. Id. at 90-91.[1] Lawaetz declared the bill enacted and directed Mapp to vacate his office.
 
 
 15
 Mapp complied with the legislative decision, but he also instituted an action in the territorial court seeking a declaration that Bill No. 18-0059 was not legally passed because the affirmative votes (9) fell short of a two-thirds majority (10) as required by Rule 813. In addition, he sought injunctive relief requiring the legislature to restore him to his seat. He contended that the legislature's failure to comply with Rule 813 violated his constitutional right to due process. He named as defendants all the members who had voted for his removal, including Lawaetz. They have contended throughout that Mapp's action against them is a non-justiciable political question.
 
 
 16
 The territorial court ruled that it had jurisdiction, that the case was justiciable and that the legislature violated Mapp's constitutional right to due process when it voted to apply Rule 713 instead of Rule 813 to the bill removing Mapp. Lawaetz and the other appellees then filed their appeal to the appellate division of the district court. On June 28, 1989, the appellate division granted them an expedited hearing and a stay of enforcement of the reinstatement order. Then, on July 14, 1989, the district court entered a final judgment which reversed and remanded the case to the territorial court with instructions to vacate its judgment and dismiss the complaint.
 
 
 17
 In the meantime, the legislature had notified the Governor of the Virgin Islands of the vacancy created by Mapp's removal from office, and he had issued a proclamation directing a special election to fill that vacancy to be held on August 8, 1989. On July 19, 1989, Mapp filed a notice of appeal in this Court and a motion for an expedited hearing on the merits. We entered an order the next day granting Mapp's motion for an expedited hearing, set a briefing schedule and directed that the case be submitted on July 27, 1989 to a panel of this Court.
 
 III.
 
 18
 We have jurisdiction over this appeal from the final order of the district court under 28 U.S.C.A. Sec. 1291 (West Supp.1989). The district court had jurisdiction over the appeal from the territorial court's order pursuant to Sec. 23A of the Revised Organic Act of 1954, as amended. Mapp contends that the territorial court had subject matter jurisdiction pursuant to V.I. Code Ann. tit. 4, Secs. 75-76 (Supp.1988), that the question was justiciable and that the territorial court properly exercised its jurisdiction to declare that passage of the resolution removing him from office by simple majority vote violated his constitutional right to due process. We have plenary jurisdiction over the issue of the territorial court's jurisdiction and the justiciability of this case.
 
 IV.
 
 19
 Mapp concedes that the legislature is the sole judge of the qualifications of its members under Sec. 6(g) of the Revised Organic Act, and he does not attack its factual determination that he was neither a qualified voter in the Virgin Islands nor a resident for three years prior to his election, as required by Sec. 6(b). Section 6(b) provides:
 
 
 20
 No person shall be eligible to be a member of the legislature who is not a citizen of the United States, who has not attained the age of twenty-one years, who is not a qualified voter in the Virgin Islands, who has not been a bona fide resident of the Virgin Islands for at least three years next preceding the date of his election, or who has been convicted of a felony or of a crime involving moral turpitude and has not received a pardon restoring his civil rights. Federal employees and persons employed in the legislature, executive or judicial branches of the government of the Virgin Islands shall not be eligible for membership in the legislature.
 
 
 21
 Revised Organic Act of 1954, Sec. 6(b), 68 Stat. 497 (1954), as amended by Act of August 17, 1972, Pub.L. No. 92-389, 86 Stat. 563 (1972). Section 6(g) of the same statute provides that "[t]he legislature shall be the sole judge of the elections and qualifications of its members...." Id., Sec. 6(g) (1954).[2]
 
 
 22
 Mapp relies primarily on Powell v. McCormack, 395 U.S. 486, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969), and Bond v. Floyd, 385 U.S. 116, 87 S.Ct. 339, 17 L.Ed.2d 235 (1966). He contends that the number of affirmative votes required to remove a seated member presents a justiciable issue and that the legislature denied him due process because the Rules of the 18th Legislature and constitutionally required parliamentary practices compel a two-thirds vote to remove a seated member. Accordingly, he argues that the 18th Legislature denied him procedural due process when it refused to follow its own Rule 813, which requires a two-thirds vote to remove a member for misconduct, and instead passed the bill removing Mapp by a simple majority under Rule 713. Rule 713 is a catch-all provision governing passage of matters not otherwise provided for.[3]
 
 
 23
 Powell and Bond are inapposite. Unlike Article I, Section 5 of the United States Constitution or Article 3, Section 7 of the Georgia Constitution,[4] the Revised Organic Act of 1954 does not expressly require a two-thirds vote to remove a member, whether for failure to meet the standing qualifications set forth in Sec. 6(b) of that statute or for any other occasional misconduct occurring after he takes office.
 
 
 24
 Moreover, neither Powell nor Bond involve removal for failure to meet pre-existing standing qualifications expressly set forth in the governing constitution. Instead, they deal with actions subsequent to a member's election--actions which did not affect the applicable constitution's eligibility requirements but which, in the judgment of the legislative body, gave subsequent occasion for removal. It is true that both cases held that a member's removal by less than the number of affirmative votes the applicable constitution expressly required for removal was justiciable. However, they did not involve removal of a member determined to be ineligible for office because he did not meet qualifications expressly set forth in the governing constitution. Indeed, the historical precedents noted in Powell indicate a legislature can act in such cases by a simple majority. See Powell, 395 U.S. at 522-41, 89 S.Ct. at 1964-74.
 
 
 25
 As Mapp concedes, the question here is whether he meets the standing requirements for service in the legislature, not whether he has otherwise so conducted himself that he should be excluded. Whether he met the standing requirements of residence and voter registration requires a factual determination. In that respect, under the Revised Organic Act, the legislature is the "sole judge" of whether he met those eligibility requirements. Mapp does not contest the legislature's substantive determination of that fact adversely to him. Hence, we need not consider it.[5]
 
 
 26
 We hold that Powell and Bond are inapposite because the 18th Legislature's determination that Mapp did not meet the Revised Organic Act's express conditions of eligibility for office necessarily implies that he had no entitlement which could trigger a due process claim under Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), and its progeny.
 
 
 27
 This leaves us with Mapp's due process challenge, based on his assertion that expulsion could not be accomplished by a simple majority vote but only by a two-thirds vote. The due process attack has two prongs. One is directed against the adoption of the removal resolution by a simple majority. The second aims at the internal procedures by which the 18th Legislature reached the decision to remove Mapp by only a simple majority. As stated, Mapp does not contest the legislature's sole and exclusive power under Sec. 6(g) of the Revised Organic Act to judge whether he met the standing eligibility requirements of residency and voter registration Sec. 6(b) expressly sets forth; nor does he ask the judiciary to review the legislature's factual determination of whether he met those standing requirements. Appellants' Brief at 10.[6] The territorial court accepted Mapp's due process argument and held that Rule 813 of the 18th Legislature (App. at 158-59) requires a two-thirds vote before he can be expelled and that the legislature's failure to apply it to his removal violated his right to due process. Rule 813 is part of Chapter 8 of the Rules of the 18th Legislature, a chapter entitled "Code of Ethical Conduct."[7] None of the provisions of Chapter 8 deals with the question of whether a member is eligible to hold the office of senator within the requirements of Sec. 6(b) of the Revised Organic Act.
 
 
 28
 Recognizing that some act of senatorial misconduct must occur before Rule 813's requirement of a two-thirds vote for expulsion applies, the territorial court held that the two-thirds rule applied to Mapp's case because the bill which authorized his removal, based on his sojourn in Georgia and registration to vote there, referred to the necessity to protect the integrity of the legislature. In so doing, the territorial court erred. Mapp did not engage in ethical misconduct after he became a senator and the legislature did not so find. Passage of the bill removing him simply determined that his registration to vote in Georgia while residing there was an act coupled with the intent necessary to change his domicile and that change coupled with the cancellation of his St. Croix voter registration made him ineligible for the office of senator in the Virgin Islands under the residence and voting registration requirements of Sec. 6(b) of the Revised Organic Act.
 
 
 29
 We reject Mapp's contention that the territorial court had the power to interpret and apply Rule 813 to his case and that the territorial court's interpretation of Rule 813 is not only correct but constitutionally required because it is a fundamental function of the judiciary " 'to say what the law is,' " Vander Jagt v. O'Neill, 699 F.2d 1166, 1170 (D.C.Cir.1982), cert. denied, 464 U.S. 823, 104 S.Ct. 91, 78 L.Ed.2d 98 (1983)(quoting Marbury v. Madison, 5 U.S. ( Cranch) 137, 177 (1803)). The premise of Mapp's argument confuses the internal rules adopted by the legislature to govern its day-to-day affairs with constitutional and statutory law and would result in judicial interference in the legislature's conduct of its own internal affairs. Absent express constitutional command, we believe the judiciary should be wary of such action. See Morgan v. United States, 801 F.2d 445 (D.C.Cir.1986), cert. denied, 480 U.S. 911, 107 S.Ct. 1359, 94 L.Ed.2d 529 (1987). In this sense, Mapp's contentions are non-justiciable.
 
 
 30
 Moreover, Mapp's arguments are circular. He was not deprived of a seat to which he was entitled. He was found ineligible for that seat because he failed to meet the residency and voting requirements of Sec. 6(b) of the Revised Organic Act. Accordingly, he had no entitlement to the seat and could not be deprived of any legitimate interest in it. Since he does not question the legislature's sole power to determine whether he did meet those requirements, he fails to demonstrate, on this record, any unlawful taking of an interest or right which would entitle him to due process protection. See Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); Robb v. City of Philadelphia, 733 F.2d 286 (3d Cir.1984).
 
 
 31
 Therefore, we will affirm the judgment of the appellate division directing the territorial court to dismiss Mapp's action.
 
 
 32
 The mandate shall issue forthwith.
 
 
 
 *
 Hon. Alfred M. Wolin, District Judge of the United States District Court for the District of New Jersey, sitting by designation
 
 
 [1]
 Mapp argues that even if Rule 813 does not apply, this violated two provisions in Chapter XX of Roberts' Rules of Order, which the 18th Legislature considers authoritative on matters not covered by its own rules. Those sections require a two-thirds vote to expel a member. The wisdom of the judicial policy of avoiding issues on the meaning and interpretation of rules of parliamentary procedure is apparent from a consideration of the competing provisions of Sec. 24 of Roberts' Rules of Order relating to appeal. That rule states:
 By electing a presiding officer, the assembly delegates to him the authority and duty to make necessary rulings on questions of parliamentary law. But any two members have the right to appeal from his decision on such a question.
 
 
 [2]
 Cf. U.S. Const. art. I, Sec. 5, cl. 1 & 2, construed in Powell v. McCormack, 395 U.S. 486, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969), which provide:
 Each House shall be the Judge of the Elections, Returns and Qualifications of its own Members....
 Each House may determine the Rules of its Proceedings, punish its Members for disorderly Behavior, and, with the Concurrence of two thirds, expel a Member.
 
 
 [3]
 Rule 713 reads as follows:
 Unless otherwise required by these Rules, all measures or questions before the Legislature or any of its committees shall require an affirmative majority vote, a quorum being present, for passage.
 Supp.App. at 75.
 
 
 [4]
 See Powell, 395 U.S. at 507, 89 S.Ct. at 1956; Bond, 385 U.S. at 129, 87 S.Ct. at 346
 
 
 [5]
 Indeed, there is some debate over whether that question is even justiciable. See Powell, 395 U.S. at 521 n. 42, 89 S.Ct. at 1963 n. 42. Even if it is, we could not hold on this record that the Virgin Islands legislature committed clear error in finding Mapp did not meet the Revised Organic Act's standing requirement of residency
 
 
 [6]
 Mapp does argue that the district court erroneously held he was not statutorily qualified (Appellants' Brief at 22-23), an issue he says was not raised by the parties and so not properly before the court. This amounts to an argument based on substantive due process that two-thirds is always required to remove a seated legislator and therefore because his removal commanded only a majority, the fact of his ineligibility has not been determined and cannot be assumed. The district court recognized this, saying:
 It is possible that the appellees' argument that the adoption of Resolution 1372 by a bare majority violated Mapp's due process rights is premised upon the substantive component of the fourteenth amendment. This contention is without merit since the Legislature has found that Mapp has not met the requirements to be a senator.
 Supp.App. at 92. The short answer to Mapp's argument is that the Revised Organic Act does not have a provision which requires a two-thirds vote to remove. In this respect, it is unlike the United States and Georgia Constitutions respectively involved in Powell and Bond and the other state constitutions Mapp refers to. Accordingly, this argument does not overcome his concession that the 18th Legislature is the sole judge of his eligibility. The district court correctly said:
 In view of the absence of any express procedural limitations relating to the expulsion of members from the Legislature, we must conclude that the framers of the Revised Organic Act intended to leave those procedures exclusively to the Discretion of the Legislature. This conclusion is reinforced by the Organic Act's designation of the Legislature as the "sole judge" of its member's qualifications.
 Id. at 90.
 This is not to say that a court is powerless to consider a removal said to be based on a member's lack of standing qualifications when there is a mere sham or fraud without any basis in fact. Because the record shows Mapp's removal was based on evidence that he was ineligible for legislative office, that issue is not before us and, like the United States Supreme Court in Powell, we do not decide it. See Powell, 395 U.S. at 521 n. 42, 89 S.Ct. at 1963 n. 42.
 
 
 [7]
 App. at 152. Rules 801 through 808 set forth substantive rules of ethical conduct for senators or their employees. Rule 809 creates a committee on ethical conduct and gives it power to render advisory opinions on questions of conduct upon request of a member or employee of the legislature and to investigate violations of Chapter 8 and recommend punishment. In addition, it sets forth the procedural requirements akin to due process for the conduct of such investigations
 Rule 810 sets forth principles of decorum. Rule 811 provides that a member who violates any of the rules of Chapter 8 is in contempt of the legislature and Rule 812 provides a range of penalties short of expulsion for violation of substantive provisions of Chapter 8. Rule 813 relates exclusively to expulsion, which can only be for cause and requires an affirmative vote of two-thirds of the entire membership to accomplish.