973 F.2d 1118
 Virdin C. BROWN, Adelbert M. Bryan, Almando Liburd, Elmo D.
Roebuck, Stephanie Scott-Williams, Arturo
Watlington, Jr., Celestino White
v.
Alicia HANSEN, Lorraine L. Berry, Malcolm C. Callender, Bent
Lawaetz, Lilliana Belardo de O'Neal, Holland L. Redfield,
II, John F. Tutein, St. Clair N. Williams, Alexander
Farrelly, Government of the Virgin Islands
Virdin C. Brown and Adelbert M. Bryan, Appellants.
 No. 92-7152.
 United States Court of Appeals,
Third Circuit.
 Argued June 11, 1992.
Decided Aug. 31, 1992.
 
 Iver A. Stridiron, (argued), Charlotte Amalie, St. Thomas, U.S. Virgin Islands, for appellants.
 J. Daryl Dodson, (argued), George H.T. Dudley, Henry L. Feuerzeig, Dudley, Topper & Feuerzeig, Charlotte Amalie, St. Thomas, U.S. Virgin Islands, for appellees, Alicia Hansen, Lorraine L. Berry, Malcolm C. Callender, Bent Lawaetz, Lilliana Belardo de O'Neal, Holland L. Redfield, II, John F. Tutein, and St. Clair N. Williams.
 Before: MANSMANN, SCIRICA and ROTH, Circuit Judges.
 OPINION OF THE COURT
 PER CURIAM.
 
 
 1
 In this case involving the validity of certain acts and resolutions of the Virgin Islands Legislature, plaintiff legislators Virdin C. Brown and Adelbert M. Bryan appeal from an order of the appellate division of the District Court of the Virgin Islands dismissing their complaint as presenting nonjusticiable political questions and reversing the territorial court's entry of a declaratory judgment and permanent injunction. Plaintiffs also appeal from the district court's grant of summary judgment for defendants on their counterclaim. We will affirm.
 
 I.
 
 2
 This case arises out of a dispute between two factions of the Virgin Islands Legislature over the validity of four bills and resolutions proposed and voted upon by defendant legislators on January 22, 1992. The Virgin Islands Legislature is a unicameral body comprised of fifteen Senators. When the Nineteenth Legislature of the Virgin Islands convened on January 14, 1991, it adopted standing rules ("the 1991 Rules") and made committee and chair assignments. Among other things, the 1991 Rules provided they could be amended, suspended, or waived only upon a vote of two-thirds of the Senators. These rules were adopted by an 11-4 vote of the legislature.
 
 
 3
 A year later, a majority of the Senators (defendants) had become disenchanted with the committee leadership and 1991 Rules, and petitioned Senate President Virdin C. Brown to convene a special session of the legislature to consider the following bills and resolutions: (1) No. 19-2001, reorganizing committee and chair assignments; (2) No. 19-2002, repealing certain 1991 Rules and adopting new rules;[1] (3) No. 19-2003, authorizing the allocation of funds to senior citizen programs; and (4) No. 19-2004, appropriating funds for stray animal programs.
 
 
 4
 President Brown convened the legislature in public session on January 22, 1992 in Charlotte Amalie. After reading defendant Senators' petition, Brown stated that the proposed bills and resolutions were not submitted in accordance with the 1991 Rules and, over the objections of several Senators, declared the meeting adjourned. Brown and his six supporters then left the Senate chambers. After their departure, Senate Vice President Alicia Hansen assumed the president's chair and continued deliberations with the remaining Senators present. Defendant Senators then adopted the proposed bills and resolutions by a vote of 8-0. Six days later, Senator Hansen forwarded the bills and resolutions to the governor, who deposited Nos. 19-2001 and 19-2002 in the Archives of the lieutenant governor's office (because they were resolutions and did not require his signature), signed No. 19-2003, and vetoed No. 19-2004.
 
 
 5
 On February 12, 1992, the Senators who had walked out of the January 22, 1992 session filed this action in the Territorial Court of the Virgin Islands against the governor and the Senators who had voted in favor of the proposed bills and resolutions. In their complaint, plaintiffs alleged that defendants violated "the Rules of the 19th Legislature" by, among other things, attempting to amend those Rules by a simple majority rather than a super-majority of two thirds. They also argued before the territorial court (but not in their complaint) that defendants' actions were contrary to the Revised Organic Act of 1954, 48 U.S.C. §§ 1541 et seq. (1988), which functions as the Virgin Islands' constitution.[2] Plaintiffs sought an injunction preventing defendants from reorganizing the standing committees and taking any action in violation of the 1991 Rules, and a declaration that bills and resolutions Nos. 19-2001 through 19-2003 were null and void. Defendants counterclaimed, seeking a declaration that the bills and resolutions were passed in accordance with the Revised Organic Act and therefore valid, and moved to dismiss plaintiffs' complaint on the ground that the controversy was nonjusticiable.
 
 
 6
 The territorial court initially entered a temporary restraining order. Then, after a hearing, it issued a memorandum opinion and order denying defendants' motion to dismiss, and, a day later, an amended judgment granting the relief sought by plaintiffs. The territorial court found plaintiffs' action justiciable because (1) the parties' differences had created an impasse which only the judiciary could resolve; and (2) defendants violated § 9(a) of the Revised Organic Act because Senator Hansen both "assumed" the president's chair without being designated "acting president" and failed to entertain a motion to overrule President Brown's adjournment.
 
 
 7
 The appellate division of the District Court of the Virgin Islands reversed.[3] Although it agreed that defendants violated the 1991 Rules, it held that they did not violate any "external source of law" (i.e., the Revised Organic Act or the United States Constitution). In particular, the district court rejected plaintiffs' argument that the two-thirds voting requirement for amending standing rules was intended to be or had become incorporated into § 6(g) of the Revised Organic Act. Following the principle that a legislature is free to disregard internally imposed rules, including those establishing super-majority voting requirements, the district court held that plaintiffs' complaint was nonjusticiable. The district court also granted defendants' request for a declaration that the challenged bills and resolutions were valid.
 
 
 8
 Two of the original seven plaintiff Senators filed this appeal. They seek reversal of the district court's judgment and reinstatement of the territorial court's judgment. In particular, they argue that the territorial court properly determined that defendants violated § 9(a) of the Revised Organic Act, and that the district court erred in holding that the two-thirds voting requirement for amending standing rules was not intended to be and has not become incorporated into the Revised Organic Act.
 
 II.
 
 9
 We have jurisdiction under 48 U.S.C. § 1613a(c)[4] and 28 U.S.C. § 1291. Our review of the district court's dismissal of plaintiffs' complaint as presenting a nonjusticiable political question is plenary. The political question doctrine does not deprive courts of jurisdiction over a case. See Powell v. McCormack, 395 U.S. 486, 516, 89 S.Ct. 1944, 1961, 23 L.Ed.2d 491 (1968). Instead, it precludes courts from granting relief that would violate the separation of powers mandated by the United States Constitution. See id. at 517, 89 S.Ct. at 1961-62.
 
 
 10
 In Baker v. Carr, 369 U.S. 186, 217, 82 S.Ct. 691, 710, 7 L.Ed.2d 663 (1962), the United States Supreme Court set out the contours of the political question doctrine:
 
 
 11
 It is apparent that several formulations which vary slightly according to the settings in which the questions arise may describe a political question, although each has one or more elements which identify it as essentially a function of the separation of powers. Prominent on the surface of any case held to involve a political question is found a textually demonstrable constitutional commitment of the issue to a coordinate political department; or a lack of judicially discoverable and manageable standards for resolving it; or the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or an unusual need for unquestioning adherence to a political decision already made; or the potentiality of embarrassment from multifarious pronouncements by various departments on one question.
 
 
 12
 Under this doctrine, courts generally refuse to scrutinize a legislature's choice of or compliance with internal rules and procedures. As the United States Supreme Court has stated:
 
 
 13
 The Constitution empowers each house to determine its rules of proceedings. It may not by its rules ignore constitutional restraints or violate fundamental rights, and there should be a reasonable relation between the mode or method or proceeding established by the rule and the result which is sought to be attained. But within these limitations all matters of method are open to the determination of the house, and it is no impeachment of the rule to say that some other way would be better, more accurate or even more just.
 
 
 14
 United States v. Ballin, 144 U.S. 1, 5, 12 S.Ct. 507, 509, 36 L.Ed. 321 (1892). As one commentator has noted, "[t]he decisions are nearly unanimous in holding that an act cannot be declared invalid for failure of a house to observe its own rules. Courts will not inquire whether such rules have been observed in the passage of the act." Norman J. Singer, Sutherland Statutory Construction § 7.04, at 434 (4th ed. 1985) (citations omitted).
 
 
 15
 This is not the first time we have been presented with a challenge to the legality of actions taken by the Virgin Islands Legislature. In Mapp v. Lawaetz, 882 F.2d 49 (3d Cir.1989), Kenneth Mapp, a member of the Eighteenth Legislature of the Virgin Islands, was removed from office by a 9-6 vote of the legislature for failure to meet voter registration and residency requirements. Mapp sued for reinstatement, contending his removal should have been governed by Rule 813 of the Eighteenth Legislature, which required a two-thirds vote to remove a Senator for misconduct, rather than Rule 713, which applied a simple majority vote requirement to matters not otherwise provided for. We held that Mapp's suit presented a nonjusticiable political question, stating:
 
 
 16
 The premise of Mapp's argument confuses the internal rules adopted by the legislature to govern its day-to-day affairs with constitutional and statutory law and would result in judicial interference in the legislature's conduct of its own internal affairs. Absent express constitutional command, we believe the judiciary should be wary of such action.
 
 
 17
 Id. at 55 (citing Morgan v. United States, 801 F.2d 445 (D.C.Cir.1986), cert. denied, 480 U.S. 911, 107 S.Ct. 1359, 94 L.Ed.2d 529 (1987)). If defendants' conduct here did not violate any constitutional or statutory provision, the question whether the legislature violated its own internal rules is nonjusticiable. See id. at 50 ("We hold that ... the question of whether [the legislature's] rule requiring a two-thirds vote applied to Mapp's case is a matter entrusted to that body for its final resolution.").[5] Absent a clear command from some external source of law, we cannot interfere with the internal workings of the Virgin Islands Legislature "without expressing lack of the respect due coordinate branches of government." See Baker, 369 U.S. at 217, 82 S.Ct. at 710.
 
 III.
 A.
 
 18
 Plaintiffs contend the district court erred in reversing the territorial court's decision that defendants' actions violated § 9(a) of the Revised Organic Act, which provides:
 
 
 19
 (a) Quorum and method of voting on bills
 
 
 20
 The quorum of the legislature shall consist of eight of its members. No bill shall become a law unless it shall have been passed at a meeting, at which a quorum was present, by the affirmative vote of a majority of the members present and voting, which vote shall be by yeas and nays.
 
 
 21
 48 U.S.C. § 1575(a) (1988). Plaintiffs claim that because Senator Hansen failed to properly re-convene the legislature after it was adjourned by President Brown, the bills and resolutions were not "passed at a meeting," as § 9(a) requires.
 
 
 22
 Except for mandating that a quorum be present, 48 U.S.C. § 1575(a), and that legislative sessions be open to the public and held in Charlotte Amalie, Saint Thomas, 48 U.S.C. § 1573(a) and (b),[6] the Revised Organic Act is silent as to what constitutes a "meeting." Plaintiffs appear to contend that a valid meeting is one convened in accordance with Robert's Rules of Order, as incorporated by chapter 1, § 107 of the 1991 Rules. However, the Revised Organic Act itself makes no mention of Robert's Rules of Order, and provides no indication that it intended to give them constitutional significance.[7]
 
 
 23
 Chapter 3, § 302 of the 1991 Rules provides in part that "the Vice President of the Legislature shall have the power to and he or she shall be required to perform the duties of the President during his or her absence...." Among the duties assigned the president are the duty (a) "to convene the Legislature ..."; (b) "to preside over each meeting of the Legislature ..."; and (e) "to certify ... that all bills and resolutions passed by the Legislature were considered and passed during a valid session of the Legislature." See 1991 Rules, ch. 3, § 301. Therefore, Senator Hansen properly assumed the president's chair once Senator Brown left the Senate chambers, and defendant Senators' conduct did not violate § 9(a) of the Revised Organic Act.
 
 B.
 
 24
 Plaintiffs also contend that defendants violated § 6(g) of the Revised Organic Act by seeking to amend the 1991 Rules by a bare majority vote. This section provides in part:
 
 
 25
 The legislature ... shall have and exercise all the authority and attributes, inherent in legislative assemblies.... The rules of the Legislative Assembly of the Virgin Islands existing on July 22, 1954 shall continue in force and effect for sessions of the legislature, except as inconsistent with this chapter, until altered, amended, or repealed by the legislature.
 
 
 26
 48 U.S.C. § 1572(g) (1988). According to plaintiffs, because there was a two-thirds voting requirement for amending standing rules at the time the Revised Organic Act was enacted, that requirement became part of the Act through § 6(g). However, even assuming that requirement was incorporated by § 6(g) of the Revised Organic Act, the Act provides that internal rules shall continue in force only "until altered, amended or repealed by the legislature." As the district court noted, plaintiffs concede that the Act is silent as to the procedure for amending internal rules. See Brown v. Hansen, No. 92-35, 1992 WL 73119 (D.V.I.App.Div. Mar. 19, 1992) (per curiam), slip op. at 17 n. 12. We believe that procedures for amending internal rules lie within the discretion of the legislature. Cf. Ballin, 144 U.S. at 5, 12 S.Ct. at 509.
 
 
 27
 Furthermore, although ambiguous on its face, § 6(g) may plausibly be read as adopting the standing rules in existence in 1954 "until altered, amended, or repealed by the legislature," and as having nothing to do with standing rules subsequently adopted by the legislature. Regardless of how one interprets it, this ambiguous provision is not the sort of clear constitutional or statutory mandate that would permit us to interfere with the internal workings of a co-equal branch of government. See Mapp, 882 F.2d at 55.
 
 
 28
 Plaintiffs also maintain that even if the two-thirds voting requirement for amending standing rules was not incorporated into the Revised Organic Act at the time of its adoption, it has since become incorporated into the Act through the legislature's continuous observance, for the past fifty-five years, of a greater-than-majority voting requirement for amending rules. We disagree. As the Supreme Court held a century ago:
 
 
 29
 It is no objection to the validity of a rule that a different one has been prescribed and in force for a length of time. The power to make rules is not one which once exercised is exhausted. It is a continuous power, always subject to be exercised by the house, and, within the limitations suggested, absolute and beyond the challenge of any other body or tribunal.
 
 Ballin, 144 U.S. at 5, 12 S.Ct. at 509.[8]
 
 30
 Rather than mandating a two-thirds vote to amend internal rules, § 6(g) of the Revised Organic Act, by providing that internal rules in place when the Act was passed would remain in effect "until altered, amended, or repealed by the legislature," comprises a "textually demonstrable constitutional commitment of the issue to a coordinate political department." Cf. Baker, 369 U.S. at 217, 82 S.Ct. at 710. Although courts may determine a legislature's compliance with external laws, here the external law itself, § 6(g) of the Revised Organic Act, commits the relevant issue to the discretion of the legislature. Therefore, we hold that defendants did not violate § 6(g) of the Revised Organic Act.
 
 C.
 
 31
 All that remains to be decided is whether the district court properly granted defendants' request for a declaration that bills and resolutions Nos. 19-2001 through 19-2003 are valid. Plaintiffs argue that if their action is nonjusticiable, it follows that defendants' counterclaim is nonjusticiable. We disagree. In essence, defendants sought a declaration that the bills and resolutions were enacted in accordance with the Revised Organic Act as well as all other pertinent external laws. As we have discussed, courts may rule on legislative compliance with external laws. See Mapp, 882 F.2d at 55. In holding that the bills and resolutions were validly enacted, the district court decided only that no external laws had been violated by their passage. See Brown v. Hansen, No. 92-35, 1992 WL 73119 (D.V.I.App.Div. Mar. 19, 1992) (per curiam), slip op. at 28 ("This Court's analysis must begin and end with an examination of whether the appellants, the majority members of a co-equal branch of government, violated the federal Constitution, the Revised Organic Act, or some other external law, thus creating the need for the intervention of the judiciary. We conclude they have not."). Therefore, we hold that the district court properly granted defendants' request for declaratory relief.
 
 IV.
 
 32
 For the foregoing reasons, we will affirm the district court's order dismissing plaintiffs' complaint and granting summary judgment for defendants on their counterclaim.
 
 
 33
 Costs taxed against appellants.
 
 
 
 [1]
 According to the district court, "the primary change sought to be instituted by the new Rules is an increase in the power of the President and the Vice-president of the Senate, especially in regard to their power to control the day to day running of the Legislature. Specifically, the new Rules appear to give the President and Vice-president greater power to make unilateral staffing and budgetary decisions." Brown v. Hansen, No. 92-35, 1992 WL 73119 (D.V.I.App.Div. Mar. 19, 1992) (per curiam), slip op. at 5 n. 6
 
 
 [2]
 The Revised Organic Act is "the Virgin Islands' analogue of a state constitution," Mapp v. Lawaetz, 882 F.2d 49, 51 (3d Cir.1989), and was intended to serve as a "basic charter of government for the territory." Virgo Corp. v. Paiewonsky, 384 F.2d 569, 576 (3d Cir.1967), cert. denied, 390 U.S. 1041, 88 S.Ct. 1633, 20 L.Ed.2d 303 (1968)
 
 
 [3]
 The Revised Organic Act provides:
 Appeals to the District Court of the Virgin Islands shall be heard and determined by an appellate division of the court consisting of three judges, of whom two shall constitute a quorum. The chief judge of the district court shall be the presiding judge of the appellate division and shall preside therein unless disqualified or otherwise unable to act. The other judges who are to sit in the appellate division at any session shall be designated by the presiding judge from among the judges who are serving on, or are assigned to, the district court from time to time pursuant to section 1614(a) of this chapter: Provided, That no more than one of them may be a judge of a court established by local law.
 48 U.S.C. § 1613a(b) (1988). Here, the appellate division consisted of the Honorable Stanley S. Brotman, Judge of the United States District Court for the District of New Jersey and Acting Chief Judge of the District Court of the Virgin Islands; the Honorable Edward N. Cahn, Judge of the United States District Court for the Eastern District of Pennsylvania; and the Honorable Maria M. Cabret, Judge of the Territorial Court of the Virgin Islands, Division of St. Croix.
 
 
 [4]
 The Revised Organic Act provides:
 The United States Court of Appeals for the Third Circuit shall have jurisdiction of appeals from all final decisions of the district court on appeal from the courts established by local law. The United States Court of Appeals for the Third Circuit shall have jurisdiction to promulgate rules necessary to carry out the provisions of this subsection.
 48 U.S.C. § 1613a(c) (1988).
 
 
 [5]
 In their complaint, plaintiffs alleged only that defendants violated the 1991 Rules. However, in their supplemental memorandum in support of their application for a temporary restraining order, plaintiffs alleged that defendants violated the Revised Organic Act. Both the territorial court and the district court addressed the merits of plaintiffs' claims based on the Revised Organic Act. Although there remains some question whether plaintiffs' allegations that defendants violated the Revised Organic Act are properly before us, we will address the merits of those allegations
 
 
 [6]
 These requirements were met here
 
 
 [7]
 Moreover, it appears that President Brown, not Senator Hansen, violated Robert's Rules of Order, and therefore the 1991 Rules (but not the Revised Organic Act) in connection with Brown's purported adjournment of the January 22, 1992 session. Robert's Rules of Order provide that absent unanimous consent or a pre-determined time for adjournment, a presiding officer may not adjourn a meeting except upon a motion from the floor. Henry M. Robert, Robert's Rules of Order § 21, at 239-40 (9th ed. 1990). President Brown's decision, sua sponte and over objections, to adjourn the session therefore appears to have violated the 1991 Rules. Of course, whether President Brown's actions in fact violated the 1991 Rules is a nonjusticiable political question. See Mapp, 882 F.2d at 50, 55
 
 
 [8]
 Moreover, the district court found, and appellants concede, that in 1989 the Eighteenth Legislature required only a three-fifths majority to amend internal rules