**SENATOR ADELBERT BRYAN, Plaintiff**

**v.**

**ALMANDO LIBURD, as Senator and President of the Twenty-First Legislature of the Virgin Islands, LORRAINE BERRY, ALLIE-ALLISON PETRUS, DAVID JONES, LILLIANA BELARDO DE O'NEAL, VARGRAVE RICHARDS, ARTURO WATLINGTON, ADLAH DONASTORG, CELESTINO WHITE, JUDY GOMEZ, OSBERT POTTER, CHUCKY HANSEN, GERARD JAMES, and INFIELD JAMES, as Senators of the Twenty-First Legislature of the Virgin Islands, Defendants**

Civ. No. 711/96

Territorial Court of the Virgin Islands

Div. of St. Croix

December 27, 1996

Adelbert Bryan, Pro Se Plaintiff, St. Croix, U.S.V.I.

Vincent Frazer and Pedro Williams, Esqs., St. Thomas, U.S.V.I., *for Defendants*

ANDREWS, *Judge*

## MEMORANDUM OPINION and ORDER

### INTRODUCTION

With a view towards protecting its good name, the Virgin Islands Legislature, for the second time in its forty-two year history, has opted to discipline one of its members. Similarly, this Court, for the second time, is summoned to rule upon the propriety of the discipline. The plaintiff, a member of the Twenty-First Legislature, has been suspended without pay from that body. He seeks to have this Court nullify the suspension. Two key issues arise from his endeavor:

1) Whether the propriety of removal of a member from office, by the legislature, for misconduct is a justiciable issue in light of the power conferred on that body by the Organic Act to be "the sole judge of qualifications of its members"?; and if so

47

2) Whether the procedure utilized to remove the plaintiff from office was violative of constitutional or statutory law?

For the reasons mentioned below, this Court concludes that the issue concerning removal of a senator is justiciable under the circumstances here, and that the removal procedures utilized did not transcend constitutional nor statutory limitations.

## PROCEDURAL BACKGROUND

The plaintiff filed this action for injunctive and declaratory relief on November 20, 1996. Specifically, he asks the Court to:

1) declare Resolution No. 1578 null and void;

2) issue an order enjoining the defendants from withholding submission of his payroll documentation to the Department of Finance, and from convening sessions without his participation; and

3) alternatively, declare The Twenty-First Legislature to be adjourned *sine die* (*i.e.*, without a return date) from November 7, 1996.

He also filed a motion requesting that a temporary restraining order be issued prohibiting the defendants from implementing or enforcing Resolution No. 1578 and from conducting further legislative business until a court hearing.

On November 26, 1996, a hearing was held on the motion for a temporary restraining order. This Court denied the motion due to the plaintiff's failure, *inter alia*, to establish immediate and irreparable harm and a likelihood that he would succeed on the merits. On November 27, 1996, the court conducted a trial on the merits. Both parties presented evidence and arguments. Thereafter, the matter was taken under advisement.

48

## FACTUAL BACKGROUND[1]

Adelbert Bryan, the plaintiff in this matter, as well as the defendants, are duly elected members of the Twenty-First Legislature of the Virgin Islands (The Legislature). They all commenced their two year terms of office in January, 1995. The Legislature is a unicameral body consisting of fifteen (15) members, fourteen (14) of which are defendants here. Seven (7) of the members are elected from the District of St. Croix, seven (7) from the District of St. Thomas-St. John, and one (1) "at large" senator is elected from the Virgin Islands as a whole. 48 U.S.C. § 1571(a) and (b); 2 V.I.C. §§ 101, 102.

On November 7, 1996, a newspaper photographer took several pictures of Bryan during the morning session of The Legislature. Bryan repeatedly requested that the photographer cease taking his picture, but his requests were ignored. Consequently, Bryan physically confronted the photographer on the public gallery of The Legislature building. During the confrontation, the photographer's camera fell, or was thrown, to the floor and separated into pieces. It appears that most of the defendants observed the incident. Plaintiff's Exhibit 2 (Transcript of Legislative Session, Part III 11/7/96), Pgs. 18-20.

During a subsequent recess, the defendants met to discuss what action to take towards Bryan due to his conduct. Bryan was present during a portion of the discussions. The defendants decided to draft a resolution censuring Bryan for his conduct. Later that day, Resolution No. 1578 ("[t]o censure Senator Adelbert M. Bryan for intentionally damaging the camera of Daily News photographer Steve Rockstein") was circulated among the senators. Plaintiff's Exhibit No. 5. When the resolution came up on the agenda, defendant Almando Liburd, the Senate President, read the charges as follows:

> Colleagues, this measure is before us as relates to an incident that happened before us today, and we witnessed

---

[1] At the November 27th trial, the parties consented to the Court's noticing of testimony adduced at the November 26th hearing. Additional testimony and exhibits were presented at the trial. The factual findings herein are derived from all of this evidence. F.R.Civ.P. Rule 52(a). The essential facts are not in dispute.

it. It involved Senator Bryan, an incident that happened here in which a camera was taken and smashed to the floor, and as such, the actions of Senator Bryan is not in conformity with this decorum of Body, and as such, he must be disciplined for it.

Plaintiff's Exhibit 2 (Transcript of Legislative Session, Part III 11/7/96), Pg. 18-19. President Liburd further explained that the resolution prescribed the penalty of suspension from duties and privileges as a senator without pay for the remainder of The Legislature's tenure (*i.e.,* January 13, 1997).[2] *Id.;* Plaintiff's Exhibit 5 (Resolution No. 1578). The body then engaged in a five-minute debate. Two senators and Bryan participated in the debate. Bryan requested and received legal clarifications of the applicable legislative rule, *i.e.,* Rule 813. He also pointed out: 1) possible error in the evidence, *i.e.,* insufficient evidence that the camera was damaged; 2) the possible inapplicability of the rule to conduct not committed on the floor of The Legislature; and 3) that other senators had committed acts of misconduct but were not censured. Thereafter The Legislature voted ten (10) to one (1) in favor of the resolution.

Although the resolution "suspended" Bryan from his "duties and privileges", he is permitted to maintain and manage an office and a paid staff for the duration of The Legislature's tenure. He is not paid a salary nor permitted to attend legislative meetings or sessions. Further, neither Bryan or his staff are allowed travel, room and board, or transportation privileges.[3]

## LEGAL ANALYSIS

### I) Justiciability[4]

Bryan's claims call into question the propriety of actions of an

---

[2] No ending date for the suspension was stated in the resolution. However, since a new legislature, *i.e.,* the Twenty-Second Legislature, commences its term on January 13, 1997, that date likewise signifies the end of the prior legislature. *See* 48 U.S.C. 1572(a).

[3] The defendants contest this point, maintaining that Bryan and his staff are permitted travel and transportation privileges. Having carefully examined the testimony on this issue however, this Court finds that the overwhelming evidence is to the contrary.

[4] At the November 26th hearing, the defendants questioned this Court's jurisdiction to entertain Bryan's claims on grounds of nonjusticiability. The Court has jurisdiction under V.I. Code Ann. tit. 4, § 76(a). The political question doctrine does not undermine

independent branch of government, *i.e.*, the Virgin Islands Legislature. This Court immediately recognizes its duty of respect due to that co-equal branch. Accordingly, it proceeds delicately so as not to violate the separation of powers doctrine by deciding nonjusticiable political questions. *Baker v. Carr*, 369 U.S. 186, 214, 82 S. Ct. 691, 709 (1962).

■ Bryan discharges a scatter shot attack on The Legislature's actions suspending him from office. Thereby, he creates a multitude of legal issues[5] which fall into two categories: a) those involving alleged violations of internal legislative rules; and b) those involving alleged violations of external sources of law.

A. Internal Legislative Rules

With respect to the internal rules, Bryan alleges that:

> 1) The defendants proceeded to debate on the motion to consider the resolution censuring him without the motion being seconded pursuant to Rule 813(b) of the 1995 Legislative Rules; and

> 2) The defendants' actions amounted to a de facto expulsion executed in violation of the procedures prescribed for expulsion by Rule 814 of the 1995 Legislative Rules, and such procedures were not waived.

The defendants respond that these claims involve the implementation of internal legislative rules and are therefore nonjusticiable political questions. The defendants are correct. It is firmly established that the legislature's failure to observe its own rules is not grounds for declaring its actions invalid. *Brown v. Hansen*, 973 F.2d 1118, 1122 (3d Cir. 1992). This Court will not scrutinize nor interfere with the legislature's conduct of its internal affairs. *Id.; Mapp v. Lawaetz*, 882 F.2d 49, 55, (3d Cir. 1989). Accordingly, Bryan's claims

---

this jurisdiction. *Brown v. Hansen*, 973 F.2d 1118, 1121 (3d Cir. 1992). It merely precludes the granting of relief which violate the separation of powers. *Id.* Thus even if some or all of the issues raised are nonjusticiable, this Court still possesses the jurisdiction to make that determination.

[5] Bryan raised numerous issues in his complaint, and then some at trial. Only those deemed to be of arguable merit are addressed in this opinion.

that his suspension was invalid for want of compliance with legislative internal rules are nonjusticiable political issues.

B. External Sources of Law

Concerning external sources of law, Bryan alleges that:

1) His Fourteenth Amendment Due Process rights have been violated because: a. he was removed from office and denied his salary without adequate notice of the intent to censure him, a hearing, or an opportunity to cross-examine and present witnesses; and b. Resolution 1578 was based on language in the legislative rules that is unconstitutionally vague on its face;

2) The defendants' actions violated his First Amendment rights since he is barred from speaking at legislative sessions or meetings;

3) Passage of Resolution 1578 constituted a de facto expulsion which created a vacancy in the membership of The Legislature and resulted in a reapportionment of The Legislature in violation of V.I. Code Ann. tit. 2, § 102 and the Equal Protection Clause of the Fourteenth Amendment;

4) The defendants' actions circumvented the will of the people of the Virgin Islands to be represented by Bryan for a full legislative term [pursuant to §6(a) of the Revised Organic Act]; and

5) Resolution 1578 was never approved by the governor and thus lacks the force of law pursuant to *Hunt v. Government of the Virgin Islands*, 382 F.2d 38, 47 (3d Cir. 1967).

Generally, where the conduct of the legislature violates an external source of law, such as a statutory or constitutional provision, a justiciable issue exists. *Hansen*, 973 F.2d at 1122. Here, Bryan alleges numerous external violations. The defendants respond that these claims are nevertheless nonjusticiable since: 1) pursuant to Section 6(g) of the Revised Organic Act of 1954, the legislature is the "sole"

52

judge of the qualifications of its members; and 2) the legislature is thereby vested with exclusive authority to discipline its members without court interference. Plaintiff's Memo in Opposition to Restraining Order, Pgs. 3, 5, 6, 15. The Court interprets this argument as a claim that the issue of disciplining a senator is textually committed by the Organic Act (an external source of law) to a coordinate political department, *i.e.*, the legislature. Such a commitment would render the controversy here nonjusticiable. *Nixon v. United States*, 506 U.S. 224, 228, 113 S. Ct. 732, 735 (1993), citing *Carr*, 369 U.S. at 217, 82 S. Ct. at 710. A necessary issue thus becomes whether disciplinary procedures (here suspension) are committed by the Organic Act exclusively to the legislature, or whether they are subject to judicial review for alleged statutory or constitutional violations? This issue requires an examination of the scope of authority conferred upon the legislature by Section 6(g). *See, Nixon*, 506 U.S. at 228 (engaging in same analysis when determining whether issue involving impeachment of a federal judge under Art. I, § 3, cl. 6 of U.S. Constitution was textually committed to U.S. Senate).

Section 6(g) of the 1954 Revised Organic Act provides in pertinent part:

> The legislature shall be the sole judge of the elections and qualifications of its members, shall have and exercise all the authority and attributes, inherent in legislative assemblies, and . . .

48 U.S.C. 1572(g). This Court interprets the above quoted language to include the power to discipline (*e.g.*, expel, suspend, etc.) a member after being duly seated. It is a power of self protection that is inherent in legislative assemblies. *See, Raney v. Stovall*, 361 S.W.2d 518, 521-522 (Ct. of App. Ken. 1962); and 72 Am Jur 2d, States, etc. § 45. Section 6(g) thus confers upon the legislature, broad powers to judge its members' qualifications and discipline them for want thereof.

In a previous case involving the expulsion of another Virgin Islands senator, the Third Circuit noted that the absence of express procedural limitations in Section 6(g) evinces Congress' intent to leave such procedures exclusively to legislative discretion. *Mapp v.*

53

*Lawaetz*, 882 F.2d 49, 54 n. 6 (3d Cir. 1989). Unlike this case, the central claim in *Mapp* was that expulsion was accomplished without the two thirds vote required by *legislative rules. Id.* at 53. The court held nonjusticiable, the issue concerning interpretation of those rules. That case did not involve the type of constitutional and statutory claims raised here. Further, the Third Circuit recognized that limitations on the legislature's power to judge standing qualifications do exist in certain circumstances. For it said:

> This is not to say that a court is powerless to consider a removal said to be based on a member's lack of standing qualifications when there is a mere sham or fraud without any basis in fact.

*Id.* at 54 n. 6. Similarly a court should not be powerless to consider a removal where a constitutional or statutory violation is alleged. Thus, *Mapp* does not require a finding of nonjusticiability under the circumstances here.

■ The Supreme Court has announced the general duty of the judicial branch to review compliance of other branches of government with the Constitution and laws. In concluding that judicial review of the propriety of the exclusion of a Congressman was not barred by the Speech or Debate Clause of the Constitution, the Court stated in *Powell v. McCormack:*

> Especially is it competent and proper for this court to consider whether its [the legislature's] proceedings are in conformity with the Constitution and laws, because, living under a written constitution, no branch or department of the government is supreme; and it is the province and duty of the judicial department to determine in cases regularly brought before them, whether the powers of any branch of the government, and even those of the legislature in the enactment of laws, have been exercised in conformity to the Constitution; and if they have not, to treat their acts as null and void.

395 U.S. 486, 506, 89 S. Ct. 1944, 1956 (1969), citing *Kilbourn v. Thompson*, 103 U.S. 168, 199 (1881). This announcement provides persuasive authority for the rationale that a grant of power to any

branch of government to engage in certain activity is not a license to violate the Constitution or laws. When such violation is alleged, it is the duty of the judiciary to decide whether the challenged activity was in compliance with the Constitution or laws.

In *Powell*, the Supreme Court interpreted the scope of the grant of power to Congress under language similar to that in the Organic act, *i.e.*, to "be the Judge of the Qualifications of its own Members." Art. I, Section 5, U.S. Const. There, a Congressman was excluded (*i.e.*, not allowed to be seated) from office based upon alleged misconduct, although he had met the standing qualifications under Art. I, Section 2 of the Constitution. The Court concluded that Congress' power to judge did not include the power to set standing qualifications since these were expressly prescribed by the Constitution. Since the claim there was that exclusion was based on matters beyond the Constitutional standing qualifications, the Court held that the propriety of removal was a justiciable issue. *Powell*, 395 U.S. at 548. *See, Bond v. Floyd*, 385 U.S. 116, 131, 87 S. Ct. 339, 347 (1966) (Finding exclusion of elected representative a justiciable issue where constitutional violation alleged, i.e, First Amendment violation, despite constitutional provision that legislature shall be judge of members' qualifications). *See also Sweeny v. Tucker*, 375 A.2d 698, 711 (Pa. 1977) (Concluding that Pennsylvania Constitution, which granted legislature power of expulsion, did not bar court review of alleged unconstitutional action (*i.e.*, senatorial expulsion) of legislature).

■ The violations alleged here involve civil liberties. Constitutional protection of these liberties would be nonexistent if any branch of government could ignore them pursuant to an alleged grant of exclusive power. The institutional competence of courts in the field of constitutional and statutory law is well established. Thus, it is only fitting that the judicial branch monitor compliance with their mandates. *See Sweeny*, 375 A.2d at 709. Accordingly, this Court concludes that Section 6(g) confers broad powers upon the legislature to determine what procedures to utilize in disciplining its members. Those powers are not exclusive and final however, for the procedures utilized may not transcend constitutional or statutory limitations. Further, it is the duty of the courts to monitor compliance with those limitations. Since allegations of constitu-

tional and statutory violations have been alleged here, the propriety of Bryan's removal is a justiciable issue.

*II)  Violations of Constitutional and Statutory Law*

As mentioned above, Bryan alleges that the actions of The Legislature violated constitutional and statutory law. Having found those issues justiciable, this Court will address them separately.

A. Due Process Deprivation

■ Bryan strenuously argues that his Fourteenth Amendment Due Process rights have been violated because: a) he was removed from office and denied his salary without adequate notice of the intent to censure him, a hearing, or an opportunity to cross-examine or present witnesses; and b) Resolution 1578 was based on language in the legislative rules that is unconstitutionally vague on its face. Before considering the adequacy of the process accorded Bryan, a determination must be made as to whether due process requirements apply in the first place. They would apply only where an interest protected by the Fourteenth Amendment can be identified. *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 571, 92 S. Ct. 2701, 2706 (1972). This Court finds no such interest.

The Fourteenth Amendment provides in pertinent part:

> . . . nor shall any State deprive any person of life, liberty, or property, without due process of law. . .[6]

U.S. Const. amend. 14. Bryan argues that he was deprived of his property (his office) and/or political liberty (right to office) without due process. Almost one hundred (100) years ago, the Supreme Court expressed the view that a "political" office is not a protected interest under the Fourteenth Amendment. The Court said in *Taylor v. Beckham*:

> The decisions are numerous to the effect that public offices are mere agencies or trusts, and not property as

---

[6] This amendment has been made applicable to the territory of the Virgin Islands by virtue of Section 3, Revised Organic Act, 1954. A similar provision also exists in the Bill of Rights listed in Section 3, of the Organic Act. Thus this claim of Bryan is an allegation of violation of local and federal constitutional (*i.e.* due process) rights.

such. Nor are the salary and emoluments property, secured by contract, but compensation for services actually rendered. Nor does the fact that a constitution may forbid the legislature from abolishing a public office or diminishing the salary thereof during the term of the incumbent change its character or make it property. . . . In short, generally speaking, the nature of the relation of a public officer to the public is inconsistent with either a property or a contract right.

178 U.S. 548, 577, 20 S. Ct. 890, 900-901 (1900). In *Taylor*, the Kentucky General Assembly adopted the findings of the election board that the defendants governor and lieutenant governor elect were erroneously declared as winners. The defendants claimed, *inter alia,* that they were being deprived of their property (elected offices) without due process of law. Specifically, they alleged that the Assembly met without notice to them or an opportunity to be heard. The Supreme Court concluded that no right secured by the Fourteenth Amendment was violated. 178 U.S. at 578.

The same view was repeated by the Supreme Court in *Snowden v. Hughes*, where it said:

More than forty years ago this Court determined that an unlawful denial by state action of a right to state *political* office is not a denial of a right of property or of liberty secured by the due process clause. (citations omitted..) Only once since has this Court had occasion to consider the question and it then reaffirmed that conclusion (citations omitted..), as we reaffirm it now.

321 U.S. 1, 7, 64 S. Ct. 397, 400 (1944) (Emphasis supplied). This Court thus concludes that Bryan's Fourteenth Amendment claims are without merit for failure to identify a protected interest.

Other courts have come to the same conclusion under similar facts. In *Mecham v. Gordon*, the state Senate of Arizona commenced an impeachment trial against the state's Governor. The Governor claimed that his constitutional rights to due process were at stake because of the unfair procedures utilized in the impeachment trial. Concluding that the right to hold the political office of governor

was not a constitutionally protected right, the Arizona Supreme Court stated:

> [P]ublic offices are public. . . trusts, and the nature or the relation of a public officer to the public is inconsistent with either a property or a contract right. Every public office is created in the interest and for the benefit of the people, and belongs to them. The right, it has been said, is not the right of the incumbent to the place, but the people to the officer.*** The incumbent has no vested right in the office which he holds. citing *Ahearn v. Bailey*, 451 P.2d, 30, 34 (Ariz. 1969). 751 P.2d 957, 962 (Ariz. 1988).

Similarly, in *Reaves v. Jones*, an expelled Arkansas senator filed suit alleging that his due process rights were violated for failure of the Senate to give him notice of the expulsion proceedings. Rejecting the senator's due process claim, the Arkansas Supreme Court stated, "[w]e have many times held that the right to hold office is not a property right." 515 S.W.2d 201, 204 (Ark. 1974).

Bryan cites *Bond v. Floyd, supra* and *Ammond v. McGahn*, 390 F. Supp. 655 (U.S.D.C. D.N.J. 1975) in support of his due process argument. Those cases however, are distinguishable from the instant circumstances in that they both involved a removal from office due to certain public "statements" made by the removed individual. *Bond*, 385 U.S. at 131, 87 S. Ct. at 347; *Ammond*, 390 F. Supp. at 660. The courts there found that the individuals were deprived of their First Amendment right to free speech. *Bond*, 385 U.S. at 137; *Ammond*, 390 F. Supp. at 660. Those cases do not hold that "political offices" trigger property or liberty rights, in and of themselves, under the Due Process Clause. Further, the *Ammond* case has been reversed on other grounds. 532 F.2d 325, 329 (3d. Cir. 1976). Accordingly, both *Bond* and *Ammond* are irrelevant to Bryan's due process claim.

## B. First Amendment Violation

Bryan maintains that the defendants' actions violated his First Amendment rights since he is barred from speaking at legislative sessions or meetings. The First Amendment to the United States Constitution, applicable to the Virgin Islands by virtue of Section 3

of the Organic Act, protects freedom of speech. Through the Fourteenth Amendment, similarly applicable to the Virgin Islands, it applies to states (and territories) and prohibits them from depriving persons of those protected liberty rights without due process of law. These amendments, however, are inapplicable to the present circumstances.

■ The actions of the defendants do not prohibit Bryan from freely expressing his views. He is still free to express whatever views he wishes, albeit not on the legislative floor or at meetings. The First Amendment guarantees the right to speak, not the right to speak at a desired location. Secondly, the actions of the defendants were not based on anything "said" by Bryan. Rather, they were based on what he did, or is alleged to have done. The basis for the discipline here is alleged disgraceful conduct, *i.e.*, Bryan's confrontation with a news photographer and the subsequent breaking into pieces of the camera. Nothing in the facts of this case hints that the defendants' decision was motivated by any "speech activity" of Bryan. *See, Board of Regents of State Colleges v. Roth*, 408 U.S. at 575 (Noting that First Amendment violation would not be established absent proof that employer's decision not to rehire university professor was based on his free speech activities). Accordingly, the defendants' action did not violate Bryan's First Amendment rights.

C. Illegal Apportionment

■ Bryan contends that since he is without certain privileges, a salary, and the right to attend sessions and meetings *for the remainder of the legislative tenure* (*i.e.*, he cannot return to The Legislature), he has been de facto "expelled". This expulsion, he continues, creates a vacancy in the membership of The Legislature yet to be filled. Their actions, he concludes, amounts to a reapportionment [*i.e.*, a reduction of St. Croix District Senators from seven (7) to (6)] in violation of V.I. Code Ann. tit. 2, § 102, and to a denial to him and his constituents of equal protection of law. This Court disagrees with Bryan's characterization of his removal as an expulsion. An expulsion signifies a "complete" and "permanent" separation from office such that *all* emoluments, privileges, and benefits associated with the office are forever canceled. Bryan aptly

points out that Resolution No. 1578 provides for suspension from "his duties and privileges as a member . . . . for *the remainder of its tenure* without pay". Resolution No. 1578 (Emphasis supplied). However, not all of his privileges were suspended, for he was permitted to maintain and manage an office and a paid staff. His office and staff can only exist as an incident of legislative membership. If Bryan was expelled, he would not be a member of The Legislature, and consequently could not maintain a legislative office or staff. Their presence, in this Court's view, is inconsistent with the concept of expulsion. Since Bryan's deprivation of the privileges and benefits of office was not complete, this Court concludes that he was not "expelled".

Further, even if Bryan was "expelled" and a vacancy thereby created, such expulsion is not invalid for failure to fill the resulting vacancy. Granted, such a vacancy would be a violation of legislative apportionment, and possibly equal protection, if not filled. V.I. Code Ann. tit. 2, §§ 102, 111(b). However, the remedy would be to mandate the legislature to act to fill the vacancy, not to invalidate the action creating the vacancy, *i.e.*, the expulsion. This Court does not read Bryan's plea as one to fill a vacancy by replacing him. Accordingly, his claim of illegal apportionment is without basis.

### D. Circumvention of Constitutional Two Year Term

Bryan argues that the actions of the defendants circumvented the will of the people of the Virgin Islands to be represented by him for a full legislative term [pursuant to §6(a) of the Revised Organic Act].[7] His reliance on the legislative term provision of the Organic Act is misplaced.

A removal of a senator from office is not, by that fact alone, a violation of Section 6(a) of the Revised Organic Act. Concededly, Section 6(a) provides that senators shall serve two-year terms. However, the Organic Act also provides that the legislature shall be the sole judge of the qualifications of its members, and shall have

---

[7] This Court addresses Bryan's argument on this point only to the extent that it implies that the defendants' action violated the Organic Act, *i.e.*, Section 6(a). To the extent that his argument implies an abrogation of third party rights (*i.e.*, the people's will), it is dismissed for lack of standing. *Duke Power Company v. Carolina Environmental Study*, 438 U.S. 59, 80, 98 S. Ct. 2620, 2634 (1978).

60

all powers inherent in legislative assemblies. 48 U.S.C. 1572(g). As explained above, this includes the power to discipline (*i.e.*, suspend or expel) a member once seated. Thus Congress contemplated that some members of the legislature may not serve full two-year terms for want of qualification. Any contrary reading of the Act would mean that, because of Section 6(a), senators could never be removed from office. Such a reading defies reason. Accordingly, legislative action, pursuant to Section 6(g), removing a senator from office does not offend Section 6(a) of the Organic Act.

E. Absence of Governor's Approval

Finally, Bryan asserts that Resolution No. 1578 is invalid because it was never approved by the Governor of the Virgin Islands. He cites *Hunt v. Government of the Virgin Islands*, 382 F.2d 38, 47 (3d Cir. 1967) in support of his position. *Hunt* is inapplicable to this case. It involved a contemplated contract, between the government and a private entity, drafted in the form of a resolution. The resolution provided for the issuance of bonds "subject to the approval of the governor". *Hunt*, 382 F.2d at 47. The governor did not approve the issuance of the bonds and the Third Circuit thus concluded that the resolution never acquired the force of law (i.e, there was never a contract). *Id.* Here, Resolution 1578 is merely the mechanism by which the legislature expressed it's decision to censure Bryan. It was not made subject to the governor's approval, nor was such approval otherwise required by law. Accordingly, Bryan's claim of invalidity on this ground is without merit.

## CONCLUSION

For the foregoing reasons, this Court concludes that the propriety of removal of a member from office, by the legislature, for misconduct is a justiciable issue. Further, the procedure utilized to remove Plaintiff from office did not violate constitutional nor statutory law.

## ORDER

For the reasons mentioned in foregoing opinion, it is hereby ORDERED that Plaintiff's Complaint is DISMISSED.