684 A.2d 1068

Honorable Jannie L. BLACKWELL, in her official
capacity as Councilwoman, Appellant,

v.

CITY OF PHILADELPHIA and Honorable Jonathan A. Saidel, in
his official capacity as City Controller, and Honorable Philip
Rivera, Jr., in his official capacity as Director of Personnel, and
Honorable Clarence Armbrister, in his official capacity as City
Treasurer, and Honorable John F. Street, in his official capaci-
ty as President of City Council, Appellees.

Supreme Court of Pennsylvania.

Argued April 29, 1996.

Decided Nov. 14, 1996.

Richard A. Sprague, Denise Pallante, Joseph R. Podraza, Jr., Philadelphia, Barbara J. Lipshutz, White Plains, NY, for J. Blackwell.

Carl E. Singley, for John F. Street.

Richard Feder, Philadelphia, for Saidel, Rivera and Armbrister.

Before FLAHERTY, ZAPPALA, CAPPY and CASTILLE, JJ.

## *OPINION ANNOUNCING THE JUDGMENT OF THE COURT*

CASTILLE, Justice.

The sole issue raised on appeal is whether a Philadelphia City Councilwoman's complaint alleging that the firing of her special assistant was in violation of one of the internal rules of the Philadelphia City Council ("City Council") and is therefore subject to judicial review, or whether this represents a non-justiciable political question. For the reasons set forth below, we find that such a complaint presents a non-justiciable political question, and on that basis, we affirm the Commonwealth Court's order which reversed the order of the trial court and remanded the matter to the trial court with instructions to dismiss the complaint.

The evidence giving rise to this appeal is that on June 1, 1992, Michael Williams was hired at the request of the Honorable Jannie L. Blackwell, in her capacity as a Philadelphia City Councilwoman, as a special assistant for her personal council office staff. This was a non-civil service position. The Honorable John F. Street, in accordance with his official duties as President of the City Council, signed Williams' appointment papers notifying the City's personnel department to include Williams on the City personnel roster and payroll.

On January 2, 1993, Street notified Williams in a written letter that he was being terminated from his position effective 5:00 p.m. on February 2, 1993. Street's letter stated that

Williams was being terminated because he had previous felony convictions for the sale of illegal narcotics which were not disclosed at the time of his employment by City Council.[1] Williams' convictions were under a different name than that used by Williams in his employment records.[2]

Blackwell disagreed with Street's decision terminating Williams' employment. Blackwell, however, did not seek review of Street's decision by City Council. Instead, Blackwell made formal written requests to Street asking him to reconsider his decision to terminate Williams on February 26, 1993, June 29, 1993 and August 27, 1993. Street did not formally responded to Blackwell's written requests and Williams was never reinstated as a City employee.

On January 10, 1994, Blackwell and Williams filed a complaint in mandamus (the "Complaint") and a motion for immediate peremptory judgment under Rule 1098 of the Pennsylvania Rules of Civil Procedure.[3] Blackwell and Williams alleged in the Complaint that Street's termination of Williams' employment violated paragraph 8 of Section II of the City Council Rules. Paragraph 8 of Section II provides, in pertinent part, that:

> 8. The President shall appoint and dismiss at his/her discretion the employees of Council with the following exceptions: ...
>
> b. the Administrative Assistant and the Clerk–Typist, or any other personnel serving each individual Council mem-

---

1. The criminal background check conducted on Williams was in accordance with Street's July 21, 1992 written memorandum informing all members of City Council, including Blackwell, that any employee processed by his office after May 31, 1992 was to be categorized as a temporary employee until his office received a certified copy of a criminal background check on that employee.

2. Williams' convictions were under the name Michael Youngblood and there is no dispute that Williams and Youngblood are the same person.

3. Rule 1098 provides that:
   [A]t any time after the filing of the complaint, the court may enter judgment if the right of the plaintiff thereto is clear. Judgment shall not be entered without prior notice to all parties unless the exigency of the case is such as to require action before notice, in which event notice shall be given as soon as possible.

ber, who shall be appointed or dismissed as directed by the Council member being served.

The Complaint asserted that this internal rule provided Blackwell with the sole and exclusive authority to select and terminate the individuals who serve on her personal staff. Count I of the Complaint sought a writ of mandamus to re-instate Williams retroactive to February 2, 1993 with back pay. Count II of the Complaint sought a writ of mandamus to immediately reinstate Williams.

On March 2, 1994, all of appellees except Street filed preliminary objections to the Complaint alleging that Blackwell and Williams failed to state a cause of action since the dispute involved a non-justiciable political question. Alternatively, the preliminary objections alleged that Blackwell and Williams were not entitled to relief since Williams had no legal entitlement to employment with the City. On March 31, 1994, Street filed preliminary objections raising the same legal challenges to the Complaint.

On May 6, 1994, the trial court sustained appellees' preliminary objections to both counts of the Complaint asserted by Williams.[4] The trial court also sustained appellees' preliminary objections to count I of the Complaint asserted by Blackwell. The trial court, however, overruled appellees' preliminary objections to count II of the Complaint with respect to Blackwell, finding that paragraph 8 of Section II gave Blackwell exclusive authority to hire and fire Williams. The trial court then granted Blackwell's motion for peremptory judgment as to count II, thereby allowing Blackwell to rehire Williams.

On May 10, 1994, appellees moved to open the peremptory judgment. On May 12, Blackwell moved to hold appellees in contempt of court for failing to reinstate Williams. On May 20, 1994, the trial court denied both motions. Appellees then timely appealed to the Commonwealth Court.

4. Williams never appealed the trial court's decision sustaining appellees' preliminary objections as to those claims he asserted in the complaint.

On June 5, 1995, an *en banc* panel of the Commonwealth Court, in a four-to-three decision, found that the trial court erred in reaching the merits of this dispute since this case involved a non-justiciable political question. Hence, the Commonwealth Court reversed the trial court's denial of appellees' petition to open the peremptory judgment and remanded the matter to the trial court with instructions to dismiss Blackwell's complaint. *See Blackwell v. City of Philadelphia,* 660 A.2d 169 (Pa.Cmwlth.1995).[5] On October 13, 1995, we granted Blackwell's petition for allowance of appeal in order to address whether a complaint alleging a violation of City Council's internal rules presents a non-justiciable political question.

■ The political question doctrine is derived from the separation of powers mandated by our tripartite federal constitutional government, *Powell v. McCormack,* 395 U.S. 486, 517, 89 S.Ct. 1944, 1961, 23 L.Ed.2d 491 (1969), and has been applied to our Commonwealth as well. *Sweeney v. Tucker,* 473 Pa. 493, 507–08, 375 A.2d 698, 705 (1977). The question of whether a non-justiciable political question is presented is one for this Court to decide as the ultimate interpreter of the Pennsylvania constitution. *Zemprelli v. Daniels,* 496 Pa. 247, 255, 436 A.2d 1165, 1169 (1981).

**5.** The majority, in finding this dispute to be non-justiciable, looked to its holding in *Dintzis v. Hayden,* 146 Pa. Cmwlth. 618, 606 A.2d 660 (1992). In *Dintzis,* the Commonwealth Court held that a court could not adjudicate the issue of whether a member of the Pennsylvania House of Representatives violated the House's internal rules governing roll call voting because a violation of the House's internal rules did not present a justiciable controversy. The Commonwealth Court majority found that *Dintzis'* reasoning also applied to the internal rules governing the organization and internal workings of a legislative body like City Council. Thus, the Commonwealth Court concluded that if an internal rule of City Council was violated, Blackwell's remedy rested solely within City Council and not the courts.

The three dissenting Commonwealth Court judges would have affirmed the trial court because they believed that *Dintzis* did not apply since that case involved a suit brought by a group of citizens opposed to higher taxes who challenged the internal rules of the Pennsylvania House of Representatives rather than, as in this case, an individual's rights under a document of government. While the dissenters believed that the underlying reasons prompting this dispute were political, they found that the issues framed in Blackwell's complaint were not political.

▇ A non-justiciable political question is presented where there is a challenge to legislative power which the Constitution commits exclusively to the legislature. *Sweeney, supra* at 508, 375 A.2d at 705. Courts will not review actions of another branch of government where political questions are involved because the determination of whether the action taken is within the power granted by the constitution has been entrusted exclusively and finally to political branches of government for self-monitoring. *Id.* at 509, 375 A.2d at 706. In deciding whether a dispute concerns a non-justiciable political question, this Court in *Sweeney, supra* adopted the standards enunciated in *Baker v. Carr*, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962). In *Baker*, the United States Supreme Court set forth the following contours of the political question doctrine:

> It is apparent that several formulations which vary slightly according to the settings in which the questions arise may describe a political question, although each has one or more elements which identify it as essentially a function of the separation of powers. Prominent on the surface of any case held to involve a political question is found a textually demonstrable constitutional commitment of the issue to a coordinate political department; or a lack of judicially discoverable and manageable standards for resolving it; or the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or an unusual need for unquestioning adherence to a political decision already made; or the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

*Id.* at 217, 82 S.Ct. at 710. The presence of any one of these elements will prompt a court to refrain from considering the claim asserted. *Zemprelli, supra* at 256, 436 A.2d at 1169.

▇ Determination of whether a complaint involves a non-justiciable political question requires making an inquiry into the precise facts and posture of that complaint, since such

a determination cannot be made merely by semantic cataloguing. *Id.* Under the political question doctrine, courts generally refuse to scrutinize a legislature's choice of, or compliance with, internal rules and procedures. If defendants did not violate any constitutional or statutory provision, the question of whether the legislature violated its own internal rules is generally non-justiciable since the courts cannot interfere with the internal workings of the legislature "without expressing the lack of respect due coordinate branches of government." *Baker, supra* at 217, 82 S.Ct. at 710. As the United States Supreme Court has stated in reference to the United States Congress:

> The Constitution empowers each house to determine its rules and proceedings. It may not by its rules ignore constitutional restraints or violate fundamental rights, and there should be a reasonable relation between the mode or method or proceeding established by the rule and the result which is sought to be attained. But within these limitations all matters of method are open to the determination of the house, and it is no impeachment of the rule to say that some other way would be better, or more accurate or even more just.

*United States v. Ballin,* 144 U.S. 1, 5, 12 S.Ct. 507, 509, 36 L.Ed. 321 (1892).

The United States Court of Appeals for the Third Circuit in *Mapp v. Lawaetz,* 882 F.2d 49 (3d Cir.1989) applied the above standards to a plaintiff's suit challenging his removal from the Virgin Islands' legislature for not being qualified to hold office. The plaintiff was not qualified to hold office as the result of a law passed by a simple majority vote of the legislature which established residency and voting requirements. Mapp challenged the law as being illegal on the basis that it was not passed by a two-thirds majority of the legislature, as required by an internal rule of the Virgin Islands' legislature on expulsion of its members. The Third Circuit rejected plaintiff's challenge to the internal rule as being non-justiciable since it found that the internal rule only governed the day-to-day

affairs of the legislature. In doing so, the *Mapp* court stated that:

> [T]he premise of Mapp's argument confuses the internal rules adopted by the legislature to govern its day-to-day affairs with constitutional and statutory law and would result in judicial interference in the legislature's conduct of its own internal affairs. Absent express constitutional command, we believe the judiciary should be wary of such action.

*Id.* at 55.

■ With the above precepts in mind, we will examine count II of Blackwell's Complaint. Count II of Blackwell's Complaint alleges that Williams' firing violated paragraph 8 of Section II of the City Council Rules. Initially, Blackwell asserts that City Council is not a legislative body to which the political question doctrine applies. We would disagree.

Under Article IX, Section 2 of the Pennsylvania Constitution:

> [M]municiplaties shall have the right and power to frame and adopt home rule charters. Adoption, amendment or repeal of a home rule charter shall be by referendum. The General Assembly shall provide the procedure by which a home rule charter may be framed and its adoption, amendment or repeal presented to the electors ... A municipality which has a home rule charter may exercise any power or perform any function not defined by this Constitution, by its home rule charter or by the General Assembly at any time.

The General Assembly provided for the delegation of its legislative powers to City Council through the First Class City Home Rule Act, 53 P.S. §§ 13101–13157. Section 13131 of the First Class City Home Rule Act provides that the City "shall have and may exercise all powers and authority of local self-government and shall have complete powers of legislation and administration in relation to its municipal function." 53 P.S. § 13131; *See also Warren v. Philadelphia,* 382 Pa. 380, 384–85, 115 A.2d 218, 221 (1955) (under First Class City Home Rule Act, city may legislate as to municipal functions as fully

as could general assembly). Moreover, the status of City Council as a legislative body is set forth in the First Class City Charter Act which provides that "the legislative branch of the government of each city of the first class shall consist of a city council." 53 P.S. § 12521. Thus, City Council, within the realm of its powers, is the legislative body under Philadelphia's home rule form of government and it is entitled to the same deference as is the General Assembly. Therefore, this assertion fails.

■ The Philadelphia Home Rule Charter provides that City Council, as a legislative body, "shall adopt rules ... defining the duties of its President and of its chief clerk and employees." 351 Pa.Code § 2.2–104. Pursuant to this section of the Code, the City Council enacted such rules. Blackwell, however, argues that the internal rule in question constitutes a binding law that is subject to review by the courts. In order to determine whether the internal rule at issue constitutes a binding law that is subject to review by the Court, we must look to the manner in which it was adopted and the reason for which it was adopted.

Here, the internal rule that Blackwell asserts was violated was adopted in accordance with Section 2–104 of the Philadelphia Home Rule Charter as Resolution No. 1. Resolution No. 1 expressly provided that it was being adopted to "provide Rules for the Government of the Council of the City of Philadelphia." As this Court has stated, a resolution is:

an informal enactment of a temporary nature, providing for the disposition of a particular piece of the administrative business of a municipal corporation. It is not a law, and there is no difference between a resolution and a motion.

*Commonwealth ex rel. Tarner v. Bitner*, 294 Pa. 549, 555, 144 A. 733, 735 (1929). This distinction is certainly true in this instance since the Philadelphia Home Rule Charter expressly provides that "every legislative act of the Council shall be by ordinance and shall begin with the words: 'The Council of the City of Philadelphia hereby ordains.'" 351 Pa.Code § 2.2–200. Resolution No. 1, however, was not entitled an ordinance and it did not begin with the proper language. Thus, Black-

well does not present a claim based on a violation of a binding rule of law as opposed to a resolution pertaining to the internal workings of City Council.

Based on the above, we conclude that Blackwell's pleadings and briefs requested the trial court to interfere in a solely legislative matter concerning the day-to-day affairs of City Council. While the justiciability doctrine permits an exception where a legislative rule conflicts with the constitution or statute, no such suggestion of a conflict even appears in Blackwell's complaint or brief. *See Zemprelli, supra* at 258, 436 A.2d at 1170 (challenge to confirmation of certain gubernatorial appointments presented a justiciable question since it concerned whether internal rule conflicted with the constitution). Therefore, the issue of whether City Council violated its own internal rules is a non-justiciable political question. To hold otherwise would improperly result in judicial interference in the legislature's conduct of its own internal affairs without expressing the "proper respect due to a coordinate branch of the government." *Baker, supra* at 217, 82 S.Ct. at 710; *See also, Dintzis, supra* (claim that one Representative of Pennsylvania House of Representatives violated House rules by manipulating his electronic roll call device presented a non-justiciable political question); *Ritter v. Commonwealth,* 120 Pa. Cmwlth. 374, 548 A.2d 1317 (1988), *aff'd per curiam,* 521 Pa. 536, 557 A.2d 1064 (1989) (Pennsylvania House of Representatives has exclusive power over its internal affairs and proceedings and courts will not review the legislature's internal affairs). Thus, if paragraph 8 of Section II of City Council rules were violated when Williams was terminated, it is up to City Council, and not this Court, to provide the remedy.

For the reasons stated above, we hold that the Commonwealth Court correctly held that the trial court erred in reaching the merits of Blackwell's Complaint requesting the trial court to interpret and enforce the internal rules of Philadelphia City Council ("City Council"). Accordingly, we now affirm the Commonwealth Court's order.

NIX, former C.J., and NIGRO and NEWMAN, JJ., did not participate in the consideration or decision of this case.

ZAPPALA and CAPPY, JJ., concur in the result.