[891 NYS2d 82]

In the Matter of RICARDO MONTANO, Respondent, v COUNTY
LEGISLATURE OF COUNTY OF SUFFOLK et al., Appellants.

Second Department, November 17, 2009

### APPEARANCES OF COUNSEL

*Berkman, Henoch, Peterson & Peddy, P.C.*, Garden City (*Andrew M. Roth* and *Joseph E. Macy* of counsel), for appellants.

*Ferruggia & Calisto, LLP*, Hauppauge (*Edward A. Calisto* of counsel), *Collado, Collado & Fiore, PLLC*, Brentwood and *Serge Martinez*, Hempstead, for respondent (one brief filed).

### OPINION OF THE COURT

DICKERSON, J.

In 2008 a committee of the respondent/defendant County Legislature of the County of Suffolk (hereinafter the County Legislature) voted to deny a legislative point of order challenging the discharge of a resolution to a vote by the full County Legislature, and subsequently discharged the resolution to the full County Legislature. The respondent/defendant William Lindsay, in his capacity as Presiding Officer of the County Legislature, participated in the committee's vote to discharge. Subsequently, the petitioner/plaintiff Ricardo Montano (hereinafter the petitioner), a member of the County Legislature, but not a member of the subject committee, commenced the instant hybrid proceeding and action against the County Legislature and Lindsay, inter alia, to review the committee's discharge, to enjoin the County Legislature from voting on the resolution, and for a judgment declaring that the discharge was unlawful and invalid. The County Legislature and Lindsay moved to dismiss the petition pursuant to CPLR 3211 (a) and 7804 (f). The Supreme Court denied the motion and granted the petition to the extent of annulling the determination denying the legislative point of order and discharging the resolution to the full County Legislature, and directing the County Legislature to reconsider its interpretation of its own internal rules and procedures. We reverse.

Power of Presiding Officer

According to the Rules of the Suffolk County Legislature (hereinafter the Rules), the Presiding Officer of the County Legislature possesses the power to establish committees and to appoint members and assign resolutions to those committees, and is "a voting member ex-officio of all Legislative commit-

tees." (Rules of Suffolk County Legislature rule 3 [A] [9].) Additionally, pursuant to rule 6 (B), legislation "shall be eligible for a vote by the full Legislature only if it [has] been discharged by at least a majority of the entire membership of the Legislative committee to which it has been assigned."

Introduction of IR 1105-2008 and its Discharge from Committee

In early 2008 legislation concerning occupational licenses, which was designated as resolution IR 1105-2008 (hereinafter the Resolution), was proposed in the County Legislature. Lindsay, as Presiding Officer, assigned the Resolution to the Consumer Protection Committee (hereinafter the Committee) for consideration. The Committee consisted of five members: Lynne Nowick, Thomas Barraga, Kate Browning, Jack Eddington, and Elie Mystal.

On April 17, 2008, the Committee convened a meeting, at which Committee members Nowick, Barraga, Browning, and Eddington were present. Committee member Mystal was not present. In addition to the "regular" Committee members, Lindsay was present in his capacity as Presiding Officer. On that day, Lindsay voted with the Committee on those tabled bills that had been referred to the Committee.

One such tabled bill was the Resolution. Nowick and Eddington voted to discharge the Resolution for a vote by the full County Legislature. Barraga voted against discharging the Resolution. Browning abstained. Lindsay cast his vote to discharge the Resolution for a vote by the full County Legislature. Thus, the votes were tallied at three to discharge, one opposed, one abstaining, and one not present. The Resolution was ruled discharged from the Committee, and it was then placed on the agenda of the General Session Meeting of the full County Legislature for April 29, 2008.

The Instant Proceeding and Action

The petitioner commenced this hybrid proceeding and action in the Supreme Court, Suffolk County, on April 28, 2008, seeking to annul the Committee's determination to discharge the Resolution pursuant to CPLR 7803 (2) and (3), and to permanently enjoin the County Legislature from considering, voting on, or enacting the Resolution at the General Session Meeting of April 29, 2008, or at any subsequent General Session Meeting, and for a judgment declaring that the discharge of the Resolution from the Committee violated Rules of the Suffolk County Legislature rule 6 (B).

In an affidavit submitted in support of his first and second causes of action, the petitioner noted that there are five standing members of the Committee and that, in a regularly attended meeting, three votes would be required to discharge a bill. The petitioner argued, in essence, that when the Presiding Officer votes, as Lindsay did on the Resolution, both his vote and his presence as a voter should be counted, thus requiring four votes to establish a majority and to discharge a bill. Accordingly, the petitioner contended that, since the Resolution only received three votes, it was improperly discharged.

The petitioner explained that, in his capacity as Chairperson of the Budget and Finance Committee, he did not interpret rule 6 (B) in the same manner as Lindsay. He asserted that if a similar voting result occurred in the Budget and Finance Committee, he would rule that the bill was not discharged. Thus, as articulated by the petitioner, there are two different interpretations of rule 6 (B) followed in the County Legislature.

On April 29, 2008, the Supreme Court granted a temporary restraining order (hereinafter the TRO), inter alia, restraining the County Legislature and Lindsay (hereinafter together the appellants) from taking any action with respect to the Resolution. Accordingly, the County Legislature did not vote on the Resolution at the General Session Meeting of April 29, 2008.

Appeal from the TRO

On May 8, 2008, the appellants moved, by order to show cause, for leave to appeal to this Court from the TRO and to vacate, cancel, dismiss, and/or modify the TRO. The order to show cause was signed by a Justice of this Court on May 8, 2008.

By decision and order on motion dated May 14, 2008, this Court granted that branch of the motion which was for leave to appeal, and granted that branch of the motion which was to vacate, cancel, dismiss, and/or modify the TRO to the extent of staying enforcement of so much of the TRO as restrained the appellants from taking any action with respect to the Resolution, pending the hearing and determination of the appeal. However, on December 11, 2008, the appeal was withdrawn, and the stay granted in this Court's decision and order on motion dated May 14, 2008 was vacated.

The Petitioner's Point of Order

At the County Legislature's General Session Meeting on May 13, 2008, the petitioner made a point of order that the Resolu-

tion should not be placed on that day's agenda because it was improperly discharged by the Committee. Lindsay, as Presiding Officer, rejected the point of order, and the petitioner moved to overrule the ruling of the Chair of the Committee that the Resolution was properly discharged. Since eight legislators voted in favor of the petitioner's motion, eight voted against it, and one abstained, the ruling of the Chair was upheld, and the full County Legislature voted on the Resolution. When it was the petitioner's turn to vote, he stated, "On the merits, I would vote no. I will not participate in this vote." The Resolution passed, with 12 votes in favor, three votes opposed, and two abstentions.

Answer

On June 2, 2008, the appellants answered the petition/complaint. They generally denied the allegations and asserted nine affirmative defenses, including lack of standing, lack of capacity to maintain the action, violation of the doctrine of separation of powers, and failure to join the County as a necessary party.

In an affirmation submitted in opposition to the petition, the appellants elaborated on the affirmative defenses, contending that the petitioner lacked standing because he had not suffered an injury, that it was a violation of the doctrine of separation of powers to enjoin the County Legislature from taking any action on the Resolution based solely on a judicial challenge to its internal procedures, and that the petition had been rendered academic because the County Legislature had voted on and approved the Resolution on May 13, 2008.

Motion to Dismiss

On June 2, 2008, the appellants moved pursuant to CPLR 3211 (a) and 7804 (f) to dismiss the petition/complaint on the grounds that the Supreme Court lacked jurisdiction over the claims, that the petitioner lacked standing and capacity to maintain the action and proceeding, that once the petitioner had exhausted his internal remedies and the Resolution was enacted by the full County Legislature, the relief he sought was rendered academic, and that the County itself was a necessary party to the action and proceeding.

In an affirmation submitted in support of their motion, the appellants argued that Lindsay had consistently interpreted rule 6 (B) to allow legislation to be discharged from a committee by a vote of a majority of those present and voting at the applicable committee meeting, as long as that number constituted a

majority of that committee's appointed membership. Annexed to the affirmation were two tally sheets from past meetings of two committees of the County Legislature, which reflected voting situations identical to that presented in the instant matter. Lindsay noted that, in those situations, his votes were cast in place of an absent committee member's vote.

In opposition to the motion to dismiss, the petitioner submitted an affirmation in which he argued, inter alia, that the Supreme Court had jurisdiction to hear the matter under CPLR article 78, that the appellants did not establish that the County was an indispensable party, and that he had standing to institute this action and proceeding because "[t]his issue cuts to the core of legislation, the ability of the Legislature to operate, and for [the petitioner] to be able to perform his Legislative obligations."

Decision and Order

In an oral decision made on June 2, 2008, the Supreme Court observed that "[w]hat we're dealing with here with the Suffolk County Legislature is a specific rule, 6B of the Legislative Rules." The court cautioned that "[i]f this [were] a discretionary act, or it was a political dispute within the legislature, [it] would not feel it necessary or proper for a decision[,] [b]ut in this particular case, we choose to get involved in it because it was a misinterpretation of a rule." The court explained that once Lindsay "decided that he was going to come into the committee meeting and vote as a member of the committee . . . it changed the number of committee members to six [from five] . . . Since his addition to the committee changed the entire number from five to six, four votes were needed to remove it from the committee." Accordingly, the court held that "the decision of the entire Legislature, the eight to eight vote affirming Mr. Lindsay's interpretation [of rule 6 (B)], was arbitrary and capricious in that it was incorrect on its face."

In an order dated June 17, 2008, the Supreme Court denied the appellants' motion to dismiss the petition.

Judgment Appealed From

In a judgment dated July 29, 2008, the Supreme Court annulled and set aside the determination of the County Legislature denying the petitioner's point of order challenging Lindsay's interpretation of rule 6 (B) on the ground that the determination was arbitrary and capricious. The County Legislature was directed "to reconsider the interpretation of its own internal rules and procedures promulgated in the 2008 Rules of the Suf-

folk County Legislature" prior to the enforcement of the Resolution.

The County Legislature and Lindsay appeal.

Discussion

### I. Justiciable Controversy/Separation of Powers

"One of the fundamental principles of government underlying our Federal Constitution is the distribution of governmental power into three branches—the executive, legislative and judicial—to prevent too strong a concentration of authority in one person or body" (*Under 21, Catholic Home Bur. for Dependent Children v City of New York*, 65 NY2d 344, 355 [1985]). The Court of Appeals has "consistently recognized that this principle of separation of powers among the three branches is included by implication in the pattern of government adopted by the State of New York" (*id.* at 355-356). "While the doctrine of separation of powers does not require the maintenance of three airtight departments of government, it does require that no one branch be allowed to arrogate unto itself powers residing entirely in another branch" (*id.* at 356 [internal quotation marks and citations omitted]).

"[I]t is a fundamental principle of the organic law that each department of government should be free from interference, in the lawful discharge of duties expressly conferred, by either of the other branches" (*Matter of New York State Inspection, Sec. & Law Enforcement Empls., Dist. Council 82, AFSCME, AFL-CIO v Cuomo*, 64 NY2d 233, 239 [1984], citing *People ex rel. Burby v Howland*, 155 NY 270, 282 [1898]; *see Matter of Fornario v Clerk to Rockland County Legislature*, 307 AD2d 927, 928-929 [2003]). "In this regard, 'it is not the province of the courts to direct the legislature how to do its work' " (*Matter of Fornario v Clerk to Rockland County Legislature*, 307 AD2d at 929, quoting *New York Pub. Interest Research Group v Steingut*, 40 NY2d 250, 257 [1976]; *see People ex rel. Hatch v Reardon*, 184 NY 431, 442 [1906], *affd* 204 US 152 [1907]). "[S]eparation of powers principles generally preclude courts from 'intrud[ing] upon the policy-making and discretionary decisions that are reserved to the legislative and executive branches' " (*Matter of Maron v Silver*, 58 AD3d 102, 107 [2008], quoting *Campaign for Fiscal Equity, Inc. v State of New York*, 8 NY3d 14, 28 [2006]).

"Justiciability is an 'untidy' concept but it embraces the constitutional doctrine of separation of powers and refers, in the broad sense, to matters resolvable by the judicial branch of

government as opposed to the executive or legislative branches or their extensions" (*Jiggetts v Grinker*, 75 NY2d 411, 415 [1990]). " '[J]usticiability', which ensures that the judiciary does not intrude upon or usurp the powers constitutionally allocated to the executive or the Legislature, holds that Judges should decide only judicially manageable questions" (*Matter of Boung Jae Jang v Brown*, 161 AD2d 49, 54-55 [1990] [some internal quotation marks omitted]). "It has also been observed that [m]erely because a case may have political overtones, involve public policy, or implicate some seemingly internal affairs of the executive or legislative branches does not, however, render the matter nonjusticiable" (*id.* at 55 [internal quotation marks omitted]). "Indeed, to avoid resolving questions of law merely because a case touches upon a political issue or involves acts of the executive would ultimately 'undermine the function of the judiciary as a coequal branch of government' " (*id.*, quoting *Matter of Anderson v Krupsak*, 40 NY2d 397, 404 [1976]).

Notwithstanding the doctrines of justiciability and separation of powers or, perhaps more aptly, because of them, " '[t]he courts will always be available to resolve disputes concerning the scope of that authority which is granted by the Constitution to the two other branches of the government' " (*Korn v Gulotta*, 72 NY2d 363, 369 [1988], quoting *Saxton v Carey*, 44 NY2d 545, 551 [1978]). "[S]eparation of powers principles . . . dictate that the courts are the ultimate arbiters of constitutional text" (*Matter of Maron v Silver*, 58 AD3d at 107).

Whether the matter presented here involves merely an internal administrative dispute within the County Legislature, which the courts should refrain from entertaining, is a threshold question (*see Matter of Anderson v Krupsak*, 40 NY2d at 402). Our colleagues in the Appellate Division, First Department, have addressed a very similar situation to that presented here. In *Urban Justice Ctr. v Pataki* (38 AD3d 20, 30 [2006]), that Court held, inter alia, that the discharge of bills from committees was an internal matter for the Legislature, not the courts. In its analysis, the Court relied upon the doctrine of separation of powers, and considered areas into which the courts had refused to intrude (*id.* at 27-28). The Court stated that the "manner in which bills are voted out of committee is determined by entirely internal rules of proceedings, which article III, § 9 of the Constitution vests in each house of the Legislature" (*Urban Justice Ctr. v Pataki*, 38 AD3d at 30).

Of course, the circumstances presented here are not identical to those in *Urban Justice.* Here, the action at issue is the dis-

charge of a bill by a committee of the county legislature, not the New York State Legislature, as in *Urban Justice*. The petitioner thus seeks to differentiate, in the context of justiciability and separation of powers, between the actions of a county legislature, which derives the authority at issue from a statute enacted by the State Legislature (*see* County Law § 153 [8]), and the actions of the New York State Legislature, which derives its authority from the New York Constitution.

As the parties are aware, we have previously determined that an issue involving an internal matter of a county legislature, as opposed to the New York State Legislature, presents a nonjusticiable controversy that is to be handled by the county legislature (*see Matter of Fornario v Clerk to Rockland County Legislature*, 307 AD2d 927 [2003]). That the matter was one arising in a county legislature rather than the State Legislature did not undermine this Court's determination that the controversy was nonjusticiable (*id.*). We determined that "the instant case involves an internal matter to be handled within the procedures of the Rockland County Legislature, and does not present constitutional implications" (*id.* at 929; *cf. Matter of Toback v Schmitt*, 26 AD3d 347 [2006]).

Courts in other instances have also determined that issues pertaining to the internal matters of county legislatures presented nonjusticiable controversies. For example, in *Cornell v Steve* (7 Misc 3d 1029[A], 2005 NY Slip Op 50816[U] [2005]), those legislators of the Cortland County Legislature who were members of the Republican Party had met and voted to appoint the petitioner to serve as majority leader. Apparently, in the past, such appointments had generally been for two-year periods (*id.*). However, in December 2004, the Republican members voted to remove the petitioner from his position as majority leader and to replace him with another individual (*id.*). The petitioner commenced a proceeding pursuant to CPLR article 78 to have the designation of his successor annulled so that he could reclaim the position of majority leader for the remainder of the year, asserting that the midterm replacement was not permitted under the governing rules of that county legislature (*id.*). The Supreme Court concluded,

> "Whether viewed as seeking an interpretation or enforcement of the Legislature's Rules, this proceeding represents an attempt to involve the court in the internal affairs of the Cortland County Legislature. As recently noted by the Appellate Division, 'it

is not the province of the courts to direct the legislature how to do its work' (*Matter of Fornario v Clerk to the Rockland County Legislature*, 307 AD2d [at] 929 . . . ). In the absence of any allegation that constitutional rights have been violated, or that a governmental body's action contravenes an applicable statute, law or ordinance, a legislature's governance of its internal affairs, which has been entrusted to it by law—including the question of whether the Legislature violated its own internal rules—should not be subject to court oversight (*see, Blackwell v City of Philadelphia*, 546 Pa. 358, 365[, 684 A2d 1068 (1996)])" (*Cornell v Steve* (7 Misc 3d 1029[A], 2005 NY Slip Op 50816[U], *1 [2005]).

█ Thus, consistent with, inter alia, *Matter of Fornario v Clerk to Rockland County Legislature* (307 AD2d 927 [2003]), we conclude that the mere fact that the legislative body at issue here is a county legislature rather than the New York State Legislature does not somehow render inapplicable the doctrines of separation of powers and justiciability.

The petitioner does assert that the County Legislature's actions contravene an applicable statute, law, or ordinance. Specifically, the petitioner claims that the actions complained of, that is, the manner in which the Resolution was reported out of the Committee, violated County Law § 153 (8) and General Construction Law § 41.

County Law § 153 (8) provides, in pertinent part: "Except as otherwise expressly provided, the board of supervisors of each county shall determine the rules of its own proceedings." Thus, the County Legislature is empowered, under the County Law, to determine the rules of its own proceedings (*see* County Law § 153 [8]). To the extent that the County Legislature derives its authority to determine the rules of its own proceedings from the County Law, its authority flows from an enactment of the New York State Legislature, as opposed to an express grant of power under the New York Constitution.

In any event, in implementing the authority granted in County Law § 153 (8), the County Legislature adopted the Rules. Rule 6 (B) governs the discharge of legislation from committee, and it was pursuant to this rule that the Resolution was discharged by the Committee to the full County Legislature for a vote.

While rule 6 (B) may have been adopted by the County Legislature pursuant to the authority granted to that body

under County Law § 153 (8), the petitioner cannot successfully claim that, in interpreting rule 6 (B), the appellants contravened County Law § 153 (8) or misinterpreted that rule. The gravamen of the petitioner's argument is that the County Legislature and Lindsay misinterpret rule 6 (B) and its majority and quorum requirements. Even if this were the case, such misinterpretation would not contravene County Law § 153 (8), which simply granted authority to the County Legislature to adopt rule 6 (B). Rather, the petitioner's contention amounts to an allegation that the appellants' actions in interpreting rule 6 (B) contravene rule 6 (B) itself. Furthermore, having been adopted by resolution pursuant to the authority granted to the County Legislature under County Law § 153 (8), the Rules, including rule 6 (B), "do not carry the weight of a Local Law or ordinance, but are simply internal regulations governing operation and procedure" (*Cornell v Steve*, 7 Misc 3d 1029[A], 2005 NY Slip Op 50816[U], *1 [2005] [emphasis omitted]; *cf. Matter of Toback v Schmitt*, 26 AD3d 347 [2006]).

▮ Further, there is no merit to the petitioner's contention, in effect, that the appellants' interpretation of rule 6 (B)—and their actions undertaken in reliance on that interpretation—contravened General Construction Law § 41. General Construction Law § 41 defines and discusses quorum and majority requirements. However, General Construction Law § 110 provides: "This chapter is applicable to every statute unless its general object, or the context of the language construed, or other provisions of law indicate that a different meaning or application was intended from that required to be given by this chapter." As the appellants maintain, their actions were undertaken pursuant to an internal rule of the County Legislature, rule 6 (B), and not pursuant to any statute. Accordingly, the provisions of General Construction Law § 41 regarding quorum and majority requirements do not apply (*see* General Construction Law § 110). Therefore, even if we were to conclude that the appellants' interpretation of rule 6 (B) was incompatible with the quorum and majority requirements set forth in General Construction Law § 41, the fact would remain that the County Legislature's actions at issue did not contravene an applicable statute.

For all of the foregoing reasons, we conclude that this dispute among members of the County Legislature concerns an internal matter for the County Legislature, not for the courts, and thus presents a nonjusticiable controversy.

## II. Standing and Capacity to Sue

■ "Standing and capacity to sue are related, but distinguishable, legal concepts" (*Wells Fargo Bank Minn., N.A. v Mastropaolo*, 42 AD3d 239, 242 [2007]; *see Silver v Pataki*, 96 NY2d 532, 537 [2001]; *Community Bd. 7 of Borough of Manhattan v Schaffer*, 84 NY2d 148, 154-155 [1994]; *Caprer v Nussbaum*, 36 AD3d 176, 181-182 [2006]).

> "Although they are both components of a party's authority to sue (*see Matter of Graziano v County of Albany*, 3 NY3d 475, 479 [2004]), capacity requires an inquiry into the litigant's status, i.e., its 'power to appear and bring its grievance before the court' (*Community Bd. 7 of Borough of Manhattan v Schaffer*, [84 NY2d] at 155), while standing requires an inquiry into whether the litigant has 'an interest in the claim at issue in the lawsuit that the law will recognize as a sufficient predicate for determining the issue at the litigant's request' (*Caprer v Nussbaum*, [36 AD3d] at 182)" (*Wells Fargo Bank Minn., N.A. v Mastropaolo*, 42 AD3d at 242).

Standing and capacity to sue present threshold matters (*see Silver v Pataki*, 96 NY2d at 536-537). Here, while the petitioner may have capacity to sue based upon his status as a member of the County Legislature (*see Silver v Pataki*, 96 NY2d at 538), he lacks standing.

A party "has standing to maintain an action upon alleging an injury in fact that falls within his or her zone of interest" (*Silver v Pataki*, 96 NY2d at 539; *see Matter of Friedman v Town Clerk of Town of Hempstead*, 62 AD3d 699 [2009]; *Matter of Bernstein v Feiner*, 13 AD3d 519, 520 [2004]). "Cases considering legislator standing generally fall into one of three categories: lost political battles, nullification of votes and usurpation of power. Only circumstances presented by the latter two categories confer legislator standing" (*Silver v Pataki*, 96 NY2d at 539).

The petitioner claims that he has standing because he was prevented from exercising his right to vote in a meaningful manner. However, it is abundantly clear that the petitioner's claimed injury here is no more than "a mere 'abstract dilution of institutional legislative power,' insufficient to confer standing" (*Urban Justice Ctr. v Pataki*, 38 AD3d at 25, quoting *Raines v Byrd*, 521 US 811, 826 [1997]; *cf. Skelos v Paterson*, 65 AD3d 339, 344-345 [2009], *revd on other grounds* 13 NY3d 141 [2009]), as the petitioner did not serve on or have a vote in the Commit-

tee when the Resolution was, according to him, improperly voted out of the Committee, the action complained of here. Thus, the petitioner's vote was not nullified or deprived of all validity as a result of the manner in which the Resolution was voted out of committee. The petitioner had no such vote. Accordingly, the petitioner cannot rely on the principle that a legislator "whose vote[ ] would have been sufficient to defeat (or enact) a specific legislative [a]ct ha[s] standing to sue if that legislative action goes into effect (or does not go into effect), on the ground that [his or her] vote[ ] ha[s] been completely nullified" (*Raines v Byrd*, 521 US at 823; *see Coleman v Miller*, 307 US 433 [1939]). The petitioner's claimed injury is, by definition, abstract and theoretical, and is not "a direct and personal injury . . . clearly within a legislator's zone of interest and unquestionably represent-[ing] a ' "concrete and particularized" ' harm" (*Silver v Pataki*, 96 NY2d at 540, quoting *Raines v Byrd*, 521 US at 819). Thus, in addition to determining that the issue before this Court presents a nonjusticiable controversy, we also find that the petitioner here lacks standing to prosecute this proceeding (*see Raines v Byrd*, 521 US 811 [1997]; *Coleman v Miller*, 307 US 433 [1939]; *Silver v Pataki*, 96 NY2d 532 [2001]; *Urban Justice Ctr. v Pataki*, 38 AD3d 20 [2006]).

### III. Remaining Contentions

The third cause of action, for a judgment declaring that the appellants' actions are unlawful, has been rendered unnecessary, and must thus be dismissed (*see Matter of 1300 Franklin Ave. Members, LLC v Board of Trustees of Inc. Vil. of Garden City*, 62 AD3d 1004, 1007 [2009]). In light of our determination, we need not reach the appellants' remaining contentions.

### Conclusion

For the reasons set forth above, we find that this hybrid proceeding and action presents us with a nonjusticiable controversy. Moreover, we conclude that the petitioner lacks standing to commence this proceeding and action.

The judgment is reversed, on the law, those branches of the appellants' motion which were to dismiss the first and second causes of action pursuant to CPLR 3211 (a) and 7804 (f) are granted, the proceeding is dismissed, the third cause of action for a judgment declaring that the appellants' actions are unlawful is dismissed as unnecessary, and the order dated June 17, 2008 is modified accordingly.

Mastro, J.P., Belen and Chambers, JJ., concur.

Ordered that the judgment is reversed, on the law, with costs, those branches of the appellants' motion which were to dismiss the first and second causes of action pursuant to CPLR 3211 (a) and 7804 (f) are granted, the proceeding is dismissed, the third cause of action for a judgment declaring that the appellants' actions are unlawful is dismissed as unnecessary, and the order dated June 17, 2008 is modified accordingly.