OPINION OF THE COURT
Bernadette T. Clark, J.
Procedural History
Before the court is an action brought by petitioner, Frank Tallarino (hereinafter petitioner), seeking relief under CPLR article 78. Petitioner contends that his constitutional rights were violated by the Oneida County Board of Legislators (hereinafter respondents or Board) when it amended the Rules of the Board of Legislators (hereinafter Rules of the Board) by decreasing the number of members from the Democratic Party on many of the standing committees. Petitioner also alleges that the Board amended rule 26 without first sending a resolution to the Ways and Means Committee in violation of the Rules of the Board. As a result, the petitioner alleges that this improper amendment changed the proportion of Democrats *173 and Republicans on the committees and it no longer reflects the composition of the full Board of Legislators.
The respondents filed a cross motion seeking dismissal pursuant to CPLR 3211 claiming that respondents are empowered by the New York State Constitution and County Law § 153 (8) to adopt their own rules and further that they followed the Rules of the Board with regard to rule 26.
The court has considered all of the submissions of counsel. Oral argument was held on July 9, 2014 and the court reserved decision.
Decision
Petitioner is seeking the following relief: (1) an order vacating and setting aside rule 26 of the Oneida County Board of Legislators for 2014-2015; (2) an order declaring the procedure followed for the adoption of rule 26 was contrary to the rules of the Oneida County Board of Legislators; and (3) an order directing the Oneida County Board of Legislators to reestablish the makeup of its standing committees so that all committees shall consist of a number of members of each political party proportionate to the percentage of such members on the Board.
As to the issue relating to the adoption of rule 26, it appears from an examination of the certified records of the Board of Legislators that on January 3, 2012 a reorganizational meeting of the Board was held. At that meeting when Resolution No. 2 was introduced for consideration, petitioner voiced his opposition to the Rules of the Board because of his concern about certain changes that were made to them. Specifically, according to the certified transcript petitioner stated:
“I would like to clarify the reason I am not going to be supporting the Rules of the Board because I do intend to research further what changes can be made to the rules. At this point in time I have had discussions with our attorney Mr. Amoroso and until I look further into it to see what can be done I am going to be voting in opposition. Thank You.”
It should be noted that petitioner did not specify any particular “change” he was referring to in the proposed Rules of the Board. After thoroughly examining the Rules of the Board, however, the court notes that one of the changes was found in rule 26. The changes included the deletion of the following language: “all committees shall consist of a number of members of each political party proportionate to the percentage of such members *174 on the Board, the Chair shall appoint, in accordance with Rule No. 26 a percentage of members proportionate to the party make up of the Board.” Once again according to the certified records, the vote by the full Board of Legislators to adopt the Rules of the Board was held and recorded. The vote was 27-1 with petitioner casting the single “no” vote. Accordingly, the Rules of the Board were duly adopted including rule 26 which was approved with the above-referenced language deleted. As a result, according to the certified records of the Board, the requirement that the composition of the committees reflect the political composition of the entire Board was no longer required by the terms of rule 26.
The certified records further indicate that when the Rules of the Board for 2014-2015 were considered by the full membership of the Board of Legislators on January 3, 2014, rule 26 was exactly the same as it was when it was voted on two years earlier in 2012. That is, the language set forth above was not included. However, this time, when Resolution No. 2 of the Rules of the Board was considered, the vote in favor was unanimous 23-0. The certified records further indicate that petitioner was present and voted in favor of Resolution No. 2, which contained the Rules of the Board.
Despite his vote in favor of Resolution No. 2, the Rules of the Board, petitioner argues that rule 26 is a nullity because rule 26 was amended and therefore should have been referred to the Ways and Means Committee for a vote. If the proposed amendment was successful in the Ways and Means Committee, the proposed amendment should have gone to the full Board for a vote in accordance with rule 55 and rule 12.
However, a careful examination of the Rules of the Board compels a finding that the Board scrupulously followed the procedure set forth in the Rules of the Board. It is clear from the certified Board records that the resolution containing the Rules of the Board was considered and adopted at the reorganizational meeting which is held at the beginning of each two-year legislative session. Since each session is for two years, the Rules of the Board are in place for only those two years. Here, the certified records confirm that the rules were voted upon on January 3, 2012, where part of the rule 26 language was deleted. Again, the Rules of the Board passed 27-1. The Rules of the Board were considered then adopted unanimously 23-0 by the full Board in the exact same form on January 3, 2014.
Thus, petitioner’s allegation that the change in rule 26 was a nullity because it was “amended” and therefore should *175 have been referred to the Ways and Means Committee is totally without merit. This rule was not “amended” as contemplated in rule Nos. 12, 55 and 60. More importantly, rule 60 provides: “After the approval of the Rules of the Board during the reorganizational meeting, these rules shall not be altered or amended except by resolution adopted by the Board and only after every proposed alteration or amendment shall have been approved by the Ways and Means Committee of the Board.” The plain language of rule 60 confirms that the referral to Ways and Means is only required when an amendment to a rule is sought other than at the adoption of the rules during the reor'ganizational meeting prior to each two-year legislative session. For example, if a resolution to delete language from a specific rule of the Board were proposed at a March meeting of the Board, that alteration or amendment would be required to be referred to the Ways and Means Committee and passed and then forwarded to the full Board to be voted upon. The certified records are clear that the language from rule 26 was deleted when the resolution was voted on at the reorganizational meeting in 2012. Once again, according to the certified records when rule 26 was considered and voted upon on January 3, 2014, the language was exactly the same as what was considered and voted on and passed (ayes) 27 to (nays) 1 in 2012.
It is very clear to this court that the Board of Legislators followed the Rules of the Board in adopting rule 26 in its current form. Again, for emphasis, the above-referenced language of rule 26 was deleted from rule 26 in a manner totally consistent with the Rules of the Board. Accordingly, petitioner’s request for an order and judgment vacating and setting aside rule 26 and declaring that the procedure followed for the adoption of rule 26 was contrary to the Rules of the Board is hereby denied.
Petitioner also seeks an order vacating the current rule 26 and “reestablishing the makeup of its standing committees so that all committees shall consist of a number of members of each political party, proportional to the percentage of such members on the board.”
Petitioner argues that changing the composition of the members of the committees by altering the proportion of Republicans to Democrats violated the “one man-one vote concept of constitutional law.” (Petitioner’s mem of law at 1.) Petitioner then cited several cases in support of his contention. However, the cases upon which petitioner relies are not on point. These cases concern issues of reapportionment of legisla *176 tive districts and are not relevant to the issues presented in this case. While the petitioner alleges that the respondents’ actions raise “constitutional violations,” the papers contain only vague references with no specific sections of the Constitution alleged to have been violated. As respondents argue, “the complaint fails to enumerate the specific constitutional rights and/or constitutional grounds upon which it relies in referencing that the Oneida County Board of Legislators failed to abide by in its establishment of the committees by its chairman.” Notwithstanding that infirmity, the court will address the merits of petitioner’s claim.
United States Constitution, article I, § 5, clause 2 provides that “[e]ach [hjouse may determine the [r]ules of its [own] [proceedings.” Similarly, New York State Constitution, article III, § 9 entitled Powers of Each House provides that “[a] majority of each house shall constitute a quorum to do business. Each house shall determine the rules of its own proceedings, and be the judge of the elections, returns and qualifications of its own members.” (Emphasis added.) Moreover, County Law § 153 (8) provides in pertinent part that the board of supervisors of each county “shall determine the rules of its own proceedings.”
After a diligent and thorough search, only one case was found that addressed a legislative body’s authority to change the political composition of its committees. In Davids v Akers, the United States Court of Appeals for the Ninth Circuit considered whether the failure of the Speaker of the Arizona House of Representatives to appoint members of each political party to standing committees in proportion to their membership in the House deprived the minority members of the rights guaranteed by the First and Fourteenth Amendments. (Davids v Akers, 549 F2d 120 [9th Cir 1977].)
The facts of Davids are strikingly similar to the case at bar and are included here for that reason. In November 1974, 60 persons were elected to the Arizona State Legislature: 33 Republicans and 27 Democrats. (See id.) Thus, fifty-five percent of the members were Republicans and forty-five percent of the membership were Democrats. (See id.) Defendant Akers was Republican and the Speaker of the House. (See id.) Under the Rules of the House, the Speaker appoints the members of each of the 14 committees. (See id.) The Democrats argued that each committee should be composed forty-five percent by Democrats. However, in Davids, the plaintiffs established that some of the *177 committees had no Democrats as members and most of the committees had only two Democrats and at least 11 Republicans. (See id.) The plaintiffs in Davids argued that this disparity in committee membership that was not in proportion to the number of Democrats in the House deprived the Democratic members in the House and the voters who elected them of rights guaranteed to them, by the First and Fourteenth Amendments to the United States Constitution and by 42 USC § 1983. (Davids v Akers, 549 F2d 120, 122 [9th Cir 1977].)
Similarly, in the case at bar, the petitioner argues that “the political makeup of the Oneida County Board of Legislators (thirteen Republicans and ten Democrats) would require that there be only one more Republican on any particular committee than a Democrat but no more than one.” Specifically, petitioner alleges that: the Airport Committee would require five Republicans and four Democrats but only has three Democrats; the Economic Development and Tourism Committee requires five Republicans and four Democrats and only has three Democrats; and the Ways and Means Committee, the Public Works Committee and the Public Safety Committee should have five Republicans and four Democrats but each have only three Democrats. Thus, petitioner argues that in light of this disparity in the committee appointments, rule 26 should be vacated and the committees be reinstated in proportion to the political membership of the Oneida County Board of Legislators.
As stated above, petitioner has cited no case law that would support the relief he is seeking. Respondents argue that the Rules of the Board, including rule 26, were adopted unanimously on January 3, 2014 by a vote of aye, 23 to nay, 0 to absent, 0. They further argue and the documentary evidence demonstrates that petitioner voted in favor of the rules proposed on January 3, 2014. These rules included rule 26— the very rule that petitioner seeks to have vacated by this court. Respondents argue that “Petitioner fails to assert specific sections of the Constitution which he deems have been violated and more importantly whether he is referring to the Constitution of the United States or the State of New York.” In addition, respondents argue petitioner lacks standing and capacity to sue, as well as their argument that courts should not intervene with the internal matters of a legislative body under a theory of separation of powers.
Once again, this court verily believes that only the Davids case is directly on point and although New York cases have ad *178 dressed different conduct by county boards of legislators, none of the cases addressed the proportionate makeup of the committees of a board of legislators.[1] The court in Davids thoroughly addressed all of the constitutional issues presented including: the First Amendment, the Fourteenth Amendment and 42 USC § 1983.
The Davids court was clear that
“nothing in the First or Fourteenth Amendments or in 42 U.S.C. s 1983 . . . can justify this attempt to inject the Federal Judiciary into the internal procedures of a House of a state legislature. The principle that such procedures are for the House itself to decide is as old as the British Parliament. It is embodied in the Constitution of the United States: ‘Each House may determine the Rules of its Proceedings.’ ” (Davids at 123, quoting US Const, art I, § 5, cl 2.)
Similarly, the Court of Appeals for the Ninth Circuit in Davids plainly stated that “we cannot dispose of the case by calling the question ‘political,’ however political it may indeed be, nor by invoking the . . . separation of powers.” (Davids at 126.) The Davids court also distinguished Baker v Carr (369 US 186 [1962]) and its progeny, Reynolds v Sims (377 US 533 [1964]), which dealt with malapportionment of electoral districts. These cases, including the cases cited by the petitioner in this case in advancing a similar argument, are not relevant to the issue presented here. This court agrees with the analysis of the court in Davids in rejecting this argument. (See Davids at 125.)[2]
*179 Based upon the sound reasoning and analysis in Davids, this court concurs that there is no constitutional requirement that committee appointments in a county legislature be in proportion to the political composition of the entire board of legislators. This court also supports the notion succinctly stated in Davids that “if this court were to undertake to grant to plaintiffs the relief that they seek, our action would set the sometimes canonized and frequently capitalized Founding Fathers, as well as the Framers and Supporters of the Fourteenth Amendment, spinning in their graves.” (Davids at 123.) Here, the Board of Legislators followed their own rules in making decisions about the political makeup of their respective committees. This court should not and will not disturb the Board of Legislators’ collective judgment in their internal affairs. This court is clearly not in a better position to pass judgment on the actions of the Board of Legislators. As poignantly stated in Davids “[t]hose who want a change have their recourse at the polls, not in . . . court.” (Davids at 125.)
Accordingly, this court, in adopting both the reasoning and result in Davids as explained above, along with the fact that petitioner could not produce any case law in support of the relief he seeks, grants the respondents’ cross motion to dismiss the petitioner’s petition in its entirety for the petitioner’s failure to state a cause of action.
Now, therefore, in accordance with the above decision, it is hereby ordered, adjudged and decreed that pursuant to CPLR 3211 (a) and 7804 (f), the respondents’ cross motion is granted and the petitioner’s petition is dismissed in its entirety. All other further relief is hereby denied.

. New York courts seem to agree that issues pertaining to internal matters of county legislatures are not within the province of the courts and that it is not for the courts to direct the legislatures how to do their work. (Matter of Montano v County Legislature of County of Suffolk, 70 AD3d 203 [2d Dept 2009].)

. “These cases are not in point. An individual citizen, voting for a candidate for public office, is in a very different position from an elected member of a legislative body . . . . It is true that, like the elector, the member has one vote as a member of the House. Nothing in the record, however, suggests that his vote is different from that of each other member. He has no more right to have other members vote with him than an elector has to have other electors vote with him. Neither has a right to win. Each has a right to have his vote counted, with the same weight as every other vote. That, themember has. Nothing has been done to interfere with the right of Democratic members to participate *179 in Democratic party affairs. The record affirmatively shows that they caucused, elected officers, proposed amendments to the Rules, including one seeking proportional representation on committee, and tried to persuade the House to adopt them. They were voted down, but the Federal Constitution does not give them, as a minority party, the right to win. This could be done only by giving greater weight to their votes than to those of the Republicans. Surely the Federal Constitution does not require a result so bizarre.” (See Davids at 126.)